[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13, 2011
JOHN LEY
CLERK

No. 10-11916
_____

D. C. Docket No. 5:09-cv-00091-RS-MD

JACKIE DALE REAGAN,
KATHY REAGAN,

Plaintiffs-Appellees,

versus

MARK MALLORY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 13, 2011)

Before MARCUS and ANDERSON, Circuit Judges,* and MILLS, District Judge.

PER CURIAM:

_____

*Honorable Richard H. Mills, United States District Judge for the Central District of
Illinois, sitting by designation.

Mark Mallory, a Calhoun County Deputy Sheriff, appeals the district court's denial of qualified immunity in Plaintiff-Appellee Jackie Reagan's § 1983 suit against him for unlawful arrest and detention. We conclude that it was not clearly established that Officer Mallory lacked probable cause to arrest Reagan for aggravated assault and therefore that Mallory was entitled to qualified immunity.[1] The district court's denial of qualified immunity is reversed.

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). It thus "operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.' " Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) (quoting Saucier v. Katz, 533 U.S. 194, 206, 121 S. Ct. 2151, 2158 (2001)). Qualified immunity "allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Galvez v. Bruce,

---

[1] Not only do we conclude that it was not clearly established that Officer Mallory did not have probable cause, we think it is likely that Officer Mallory had actual probable cause under these circumstances, but we need not decide that issue in this case.

552 F.3d 1238, 1241 (11th Cir. 2008) (internal quotation marks and alterations omitted).

Officer Mallory was entitled to qualified immunity on Reagan's false arrest claim so long as he had probable cause or arguable probable cause for the arrest. See Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002). Probable cause to arrest exists under both federal and Florida law when an arrest is "objectively reasonable based on the totality of the circumstances." Id. at 1195. "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (citations and quotations omitted). Probable cause requires more than a mere suspicion, but not the level of convincing proof necessary to support a conviction. Id. Arguable probable cause exists where reasonable officers in the same circumstances and with the same knowledge as the defendant could have believed that probable cause existed. Id. To determine whether probable cause or arguable probable cause exists, this Court must look to state law defining the substantive offense.

Florida defines assault as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and

doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011. Aggravated assault is assault "[w]ith a deadly weapon without intent to kill." Fla. Stat. § 784.021.

However, a use of force that appears to fulfill the other elements of assault is justified, and therefore not unlawful, when used to the extent necessary to defend property. Florida statute provides:

> A person is justified in the use of force, except deadly force, against another *when and to the extent that the person reasonably believes that such conduct is necessary to prevent or terminate the other's trespass* on, or other tortious or criminal interference with, either real property other than a dwelling or personal property.

Fla. Stat. § 776.031 (emphasis added). The statute creates an immunity from criminal prosecution. Fla. Stat. § 776.032(1) ("A person who uses force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force.").

Under Florida law, law enforcement officers have a duty to assess the validity of this defense, but they are provided minimal, if any, guidance on how to make this assessment. "A law enforcement agency may use standard procedures for investigating the use of force as described in subsection (1), *but the agency may not arrest the person for using force unless it determines that there is probable*

4

*cause that the force that was used was unlawful.*" Fla. Stat. § 776.032(2) (emphasis

added). "This allows law enforcement officers to determine a suspect's immunity

prior to making an arrest." Velasquez v. State, 9 So. 3d 22, 24 (Fla. 4th DCA

2009), abrogated on other grounds by Dennis v. State, 51 So. 3d 456 (Fla. 2010).

> By defining "criminal prosecution" to include the arrest,
> detention, charging, or prosecution of the defendant, the statute allows
> for an immunity determination at any stage of the proceeding. Created
> to eliminate the need to retreat under specified circumstances, the
> statute authorized the immunity determination to be made by law
> enforcement officers, prosecutors, judges, and juries. In enacting the
> statute, however, the legislature did not restrict the time frame for
> determining immunity, but rather provided a time continuum
> stretching across the entire criminal process."

Id. "Despite section 776.032's broad temporal application, running from before

arrest through trial, there is no legislative guidance as to the statute's

implementation." Horn v. State, 17 So. 3d 836, 838 (Fla. 2d DCA 2009).

Not only is it generally unclear how an officer is to make the probable cause

determination when a person accused of assault raises the immunity provided for

by Florida Statutes § 776.032, it is even less clear when the alleged trespasser is in

retreat. Our research revealed no Florida cases which discuss the effect of a

trespasser's retreat on the viability of immunity where § 776.031 triggers the

§ 776.032 immunity. Cases discussing whether immunity from prosecution

pursuant to § 776.032 is applicable when the victim of an assault is retreating have

5

instead arisen where the underlying statute triggering immunity is § 776.013, rather than § 776.031. See, e.g., Hair v. State, 17 So. 3d 804 (Fla. 1st DCA 2009); State v. Heckman, 993 So. 2d 1004 (Fla. 2d DCA 2007). Those cases, both issued after the events of this case, expressed opposite views about the effect of retreat. Compare Hair, 17 So. 3d at 806 ("The statute makes no exception from the immunity when the victim is in retreat at the time the defensive force is employed.") with Heckman, 933 So. 2d at 1004 ("We conclude that immunity does not apply because the victim was retreating from Heckman's dwelling when Heckman shot him."). These divergent opinions highlight the fact that it was not clearly established in 2006, when the events of this case occurred, nor is it clearly established today, that § 776.032 immunity applies when a person uses force after a trespasser is already in retreat.

Furthermore, the effect of retreat is even more profound where § 776.031—the statute relevant for this case—rather than § 776.013, triggers immunity under § 776.032. Section 776.013 creates a presumption that a person using deadly force was in fear of their life, thereby relieving him of the need to prove this element, when "[t]he person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, *a dwelling, residence, or occupied vehicle*." § 776.013(1)(a)

6

(emphasis added). Section 776.031, on the other hand, justifies force "to the extent that the person reasonably believes that such conduct is necessary to prevent or terminate the other's trespass." Thus, cases which allow immunity on the basis of § 776.013 will most often involve threats to the person, see, e.g., Hair, 17 So. 3d at 805–06 (involving an unlawful and forcible entry into an occupied vehicle). On the other hand, immunity on the basis of § 776.031 will generally involve threats to property. Where § 776.031 is at issue, retreat will arguably convey some indication that force is no longer necessary to terminate the trespass because the trespass is already in the process of being terminated.

The district court concluded that Officer Mallory could not have had probable cause to arrest Reagan for an aggravated assault because Reagan was justified in his use of force pursuant to § 776.031. The district court's holding required two separate but related conclusions; first, that the amount of force Reagan used would have appeared necessary to a reasonable person, and, second, that not only would the amount of force used appear reasonably necessary, but that it was clearly established that the amount of force used by Reagan was justified by statute such that Officer Mallory could not have thought that there was probable cause to arrest Reagan for aggravated assault. The question on appeal is whether, viewing the facts in a light most favorable to Plaintiff Reagan, any reasonable

7

officer could have found probable cause under the totality of the circumstances and the facts known to Mallory at the time of arrest.

We disagree with the district court that a reasonable officer could not have thought probable cause existed when faced with these facts, and, therefore, hold that Officer Mallory is entitled to qualified immunity. There was ample probable cause establishing the prima facie existence of an aggravated assault. The complaining witnesses reported that Reagan had threatened all three of them by both word and act, pointing his gun while making verbal threats. Reagan had the apparent ability to carry out his threats and Harris, White, and Ingram each had a well-founded fear that violence was imminent. All three told Officer Mallory in their sworn statements that they were in fear for their lives and thought that Plaintiff would kill them. Because Reagan threatened them with a gun, a deadly weapon, the facts as described to Mallory presented probable cause of an aggravated assault, aside from the immunity issue. Thus, Plaintiff Reagan's case hinges on whether he is entitled to immunity pursuant to § 776.031.

Although we need not so hold, Reagan arguably had the right to point his gun at and threaten Harris while Harris was inside Reagan's truck. It is possible this level of force was necessary to terminate Harris's trespass into the truck, especially in light of the fact that Reagan's service weapon was located within the

vehicle, visible and within Harris's reach. However, we do not think a person in Reagan's position could reasonably believe that it was necessary to continue to use this same level of force when the allegedly trespassing party was already in retreat. Any threat posed by Reagan's loaded service weapon, which he had left in his vehicle, ceased when Harris immediately exited the truck at gunpoint. Further, we do not think it was necessary to point a weapon at and verbally threaten White and Ingram, who remained in the repo truck during the entire incident. The men arrived at the Reagan's property in broad daylight and it was clear that Reagan knew the three were repo men upon their arrival. Reagan told Mallory that he recognized White as the repo man who had been on the property previously to repossess his truck, and the vehicle Harris, White, and Ingram arrived in was clearly marked as a repo truck.

When Officer Mallory interviewed Reagan prior to his arrest, Reagan immediately admitted that he pointed his gun directly at Harris. The three complaining witnesses told Mallory that Reagan pointed his gun at each of them and threatened to kill them, and all three made sworn statements that Reagan pointed his gun at both Ingram and White, who had never stepped out of their own wrecker. The sworn statements of Harris and Ingram indicated that they told Mallory that Reagan continued to point his gun at Harris after he exited Reagan's

9

truck, and as Harris retreated down the driveway and entered the repo truck. Those sworn statements also reveal that they also told Mallory that after Harris got into the wrecker with Ingram and White (who never got out of the wrecker), Reagan pointed his gun at, and threatened to kill, all three of them.[2] Officer Mallory could have reasonably believed, based on the sworn testimony of all three complaining witnesses, that Reagan continued to point his weapon and threaten to kill Harris after a person in Reagan's position would no longer have reasonably believed that this conduct was necessary to terminate the trespass. Likewise, Mallory could have reasonably believed that Reagan unnecessarily pointed his weapon at Ingram and White, who posed no threat to Reagan or his property. Therefore, Mallory had at least arguable probable cause, for Reagan's arrest and Mallory is entitled to qualified immunity.

For the foregoing reasons, the judgment of the district court is

REVERSED.

---

[2] The district court apparently accepted the plaintiffs' post-hoc assertions in their brief to the district court to the effect that "Harris, White, and Ingram were not retreating when Plaintiff threatened them, and Mallory was never told anything to the contrary by Harris, White and Ingram." Reagan v. TitleMax of Ala., Inc., No. 5:09-cv-91/RS-MD, at 4 (N.D. Fla. Apr. 9, 2010). The record belies this, as demonstrated by the above description of the sworn statements given to Mallory. Moreover, we have also carefully examined the Plaintiffs' own sworn statements to Mallory before the arrest. Those statements do not say anything one way or the other about Reagan's pointing the gun or threatening the repo men as Harris retreated. Thus, Plaintiffs' statements to Mallory do not take issue with the retreat issue.