# Supreme Court of Florida

_____

No. SC14-2162
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**ROBERT FRANKLIN FLOYD,**
Respondent.

[March 10, 2016]

LEWIS, J.

This case is before the Court for review of the decision of the First District

Court of Appeal in Floyd v. State, 151 So. 3d 452 (Fla. 1st DCA 2014).  In its

decision the district court ruled upon the following question, which the court

certified to be of great public importance:

> DOES FLORIDA STANDARD JURY INSTRUCTION
> (CRIMINAL) 3.6(F) PROVIDE CONFLICTING INSTRUCTIONS
> WITH RESPECT TO THE DUTY TO RETREAT?

Order Granting Mot. to Certify at 1, Floyd v. State, No. 1D11-4465 (Fla. 1st DCA

Oct. 17, 2014).  We have jurisdiction.  See art. V, § 3(b)(4), Fla. Const.

# BACKGROUND

Robert Franklin Floyd, the Respondent, was charged with one count of second-degree murder and one count of shooting at, into, or within an occupied vehicle in connection with the death of Getyron Lopez Benjamin. Floyd asserted that he shot at the vehicle in which Benjamin was a passenger both in self-defense and defense of others.

Floyd was hosting a party at his residence on the night of the shooting. With approximately fifty people in attendance and nearly as many witness accounts, there were abundant questions of fact regarding the incident. It is not disputed, however, that Benjamin and his friend Gerald Banton were confronted and surrounded by several of Floyd's friends and asked to leave; that Floyd pushed Banton; and that Banton quickly flashed, but did not point, a handgun.[1] It is also undisputed that Floyd then ran to his truck to arm himself with his rifle while Benjamin and Banton ran in the opposite direction toward a vehicle, purportedly to leave the party. What was heavily disputed in a he-said-she-said affair—very common in self-defense cases—included whether Floyd was the first to shoot and whether Benjamin and Banton were driving away in retreat when the shooting

---

1. There was testimony that Banton had a valid Alabama permit to carry a concealed weapon at the time and that such a permit was honored in Florida.

started.  After hearing the testimony of nearly fifty witnesses, the jury convicted

Floyd of both crimes, for which he was sentenced to thirty years' imprisonment.

Prior to deliberating, the jury was instructed in pertinent part:

Jury Instruction 3.6(f). Justifiable use of Deadly Force.

An issue in this case is whether the defendant acted in self defense.  It is a defense to all of the offenses with which Robert Franklin Floyd is charged if the death of [Getyron] Lopez Benjamin resulted from the justifiable use of deadly force.

The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself or another while resisting:

1.  Another's attempt to murder him or another.  Or.
2.  Any attempt to commit aggravated battery or aggravated assault upon him or another.

"Deadly force" means force likely to cause death or great bodily harm.

A person is justified in using deadly force only if he reasonably believes that such force is necessary to prevent:

1.  Imminent death or great bodily harm to himself or another. Or.
2.  The imminent commission of aggravated battery or aggravated assault against himself or another.

. . . .

However, the use of deadly force is not justifiable if you find:

1.  Robert Franklin Floyd initially provoked the use of force against himself, unless.
A.  The force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great

bodily harm and had exhausted every reasonable means to escape the danger other than using deadly force.  Or.

B.  In good faith the defendant withdrew from physical contact with another person and clearly indicated to that person that he wanted to withdraw and stop the use of deadly force.  But that person continued or resumed the use of force.

In deciding whether a defendant was justified in the use of deadly force you must judge him by circumstances by which he was surrounded at the time the force was used.  The danger facing the defendant need not have been actual, however, to justify the use of deadly force the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed the danger could only be avoided through the use of that force.

Based upon appearances the defendant must have actually believed that the danger was real.

If the defendant was not engaged in any unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or another, or to prevent the commission of a forceable [sic] felony.

(Emphasis supplied.)

With regard to the instructions, Floyd's counsel did not raise a contemporaneous objection, or any objection for that matter.  Instead, as evidenced in the jury charge conference, Floyd's trial counsel agreed to the instructions and actively participated in tailoring Florida Standard Jury Instruction (Criminal) 3.6(f) to the circumstances of the case:

- 4 -

**The Court:** <u>I expect you'll be looking at this tonight and if there's an issue, you'll let me know.</u>  Thankfully we've got computers and we can adjust.

All right.  <u>Justifiable Use of Deadly Force.  That's one we probably want to spend a little time on.  Have you looked at it?</u>

**[Defense Counsel]:** <u>I have, Your Honor.</u>

**The Court:** <u>Do you like the way they've done it here and agree with it?</u>

**[Defense Counsel]:** <u>Yes, Your Honor.</u>  I'll just comment on I have read the first section of that - -

. . . .

**The Court:** Anything else?

**[Defense Counsel]:** - - yes, Judge.  Just moving down we get into, "However the use of deadly force is not justifiable, if you find 1(A) - -" and look at the standard jury instruction.  We kind of fill in the blank, and it has the assailant, and you identify that person.  The State has identified the assailant as - - okay, Getyron Lopez Benjamin.  And I don't agree that's applicable, Judge, not just Mr. Benjamin - - identify the individuals.  The evidence suggests that the threat was coming from Gerald Banton, Judge.

I don't know if it's a typo or if the State has - -

**[Prosecutor]:** Well - -

**[Defense Counsel]:** - - there's a reason why the State was including Mr. Benjamin.

**[Prosecutor]:** - - the deadly force was used on Getyron Benjamin.  So that's why I put his name in there.

Now, you know, I don't want to get in a situation where we're having to define transferred intent, if we can help it.  So there may be a way that we can word this to avoid that.

What if we just said, "Other than using deadly force," and stop, and then went on "or?"  I mean, we know where he used the deadly

- 5 -

force. He used it at the vehicle - - at the flashes. And that's his testimony. We know where the bullets wound up, so nobody is going to be confused about that. The issue is was he justified in using deadly force, firing the gun at the vehicle?

And so I think that it would probably be less confusing and require less explanation if we just said, "And had exhausted every reasonable means to escape the danger other than using deadly force," skip out on who, and then put "or," and then go on to B.

**[Defense Counsel]:** I agree with that, Judge.

**The Court:** Okay. And just for the record I agree I think that clears it up without having to get into transferred intent and create instructions so we might spend a lot of time doing that might be confusing. I think this makes sense. You agree?

**[Defense Counsel]:** I do, Your Honor.

**The Court:** All right. [Prosecutor], you agree as well?

**[Prosecutor]:** Yes, Judge.

**The Court:** All right. So (B) is correct. And then we come down to "inciting [sic] whether the defendant was justified."

**[Prosecutor]:** Well, let's talk about (B) first real quick.

**The Court:** (B), okay.

**[Prosecutor]:** What I wrote in there, talking about who the assailant was, was I put in another person.

**The Court:** Right.

**[Prosecutor]:** I did not know whether, you know, Judge, there were some people who said the passenger window, some - - you know, Gus Benjamin had gunshot residue on his hands. I didn't know what I was faced with. I didn't know if there was going to be a claim that maybe someone else was firing, so I just put another person.

And so that's the law. And it's applicable both to when he's in physical contact with Gerald Banton as well as when he's in the gunfire with the vehicle, whoever is firing from the vehicle. And so I've just made it generic. I just wanted everybody to realize that.

**The Court:** Any objection to the use of another person?

**[Defense Counsel]:** No, Your Honor.

**The Court:** You think that's clear as well?

**[Defense Counsel]:** I do, Judge.

**The Court:** Okay.

**[Defense Counsel]:** Judge, I've read through the remaining portion of this instruction. And the only - - again, [the Prosecutor] might be anticipating and this the only thing I'd like to clarify, is on the next page, Judge, which will be the third paragraph at the bottom.

**The Court:** "In considering?"

**[Defense Counsel]:** Yes, Your Honor, "Considering the issue of self defense you may take into account the relative physical abilities and capacities of the defendant," and the State has put in there, "his alleged attacker or attackers."

**The Court:** What is it about that?

**[Defense Counsel]:** Judge, I'm just looking at it to make sure there's no - - not a more appropriate description, but the more I look at it, I think that - -

**[Prosecutor]:** Assailants?

**[Defense Counsel]:** If you look at the paragraph preceding this one, "If the defendant was not engaged in unlawful activity and was attacked in any place - -"

**[Prosecutor]:** Yeah.

**[Defense Counsel]:** - - it's consistent with - -

**[Prosecutor]:** I think that's why I used the word.

**[Defense Counsel]:** Judge, I'll agree that's appropriate.

**The Court**: Do you like it the way it is or no?

**[Defense Counsel]:** Yes, Your Honor. I do.

**[Prosecutor]:** Do you want to keep the S in there?

**[Defense Counsel]:** That's fine.

**[Prosecutor]:** Okay.

**[Defense Counsel]:** Judge, we agree with jury instruction pursuant to any modifications that we talked about.

**The Court:** Okay. And again, I'll let you look at it tonight. If there's any other thoughts, you'll let me know in the morning. I'm just trying to get as far as we can on this.

. . . .

[The next morning, the following colloquy took place:]

**[Defense Counsel]:** Your Honor, I do have one matter. And I apologize.

**The Court:** Yes, sir.

. . . .

**[Defense Counsel]:** If I can draw the Court and counsel's attention to Jury Instruction 3.6F. Justifiable Use of Deadly Force instruction.

**The Court:** Okay.

- 8 -

**[Defense Counsel]:** Your Honor, I thought we had discussed this yesterday.

And I am referring to the Stand Your Ground issue which would be the fourth to the last paragraph.

**The Court:** Is there, do I need to look at the model instruction as well?

**[Defense Counsel]:** I don't think so, Your Honor. I'm just asking that another, "or another" be placed in there. I thought that we discussed that.

**The Court:** Let me see.

**[Defense Counsel]:** And I believe the evidence supports.

**[Prosecutor]:** You know, I think that we may have missed that, but I have no objection to that being inserted, Judge. "To himself or another."

That's at the top of Page 18.

**The Court:** Top of 18.

**[Prosecutor]:** Second line.

**The Court:** Including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or another.

**[Defense Counsel]:** Yes, Your Honor.

**The Court:** Or prevent, or to prevent the commission of a forceable [sic] felony.

Is that correct?

**[Defense Counsel]:** That's correct, Your Honor.

**[Prosecutor]:** I agree.

. . . .

**The Court:** Okay. All right. Anything else before I bring the jury?

**[Prosecutor]:** No, Your Honor.

**[Defense Counsel]:** Nothing from the Defense.

(Emphasis supplied.)

On appeal before the First District, Floyd contended for the first time that the jury instructions conflicted with regard to the duty to retreat. See id. at 454. The First District examined the trial record for fundamental error because there was no contemporaneous objection during trial. See id. The First District agreed with Floyd both that the instructions were contradictory and that the error constituted fundamental error. Id. It explained that the jury instructions therefore negated Floyd's sole defense of self-defense and defense of others. Id. As a result, the First District reversed Floyd's convictions, vacated his sentences, and remanded for a new trial on both counts. Id. The State, however, filed a motion requesting that the First District certify the question at issue as one of great public importance. The First District granted the motion and we accepted jurisdiction.

## ANALYSIS

We have held that trial courts should not give instructions that are confusing, contradictory, or misleading. See Butler v. State, 493 So. 2d 451, 452 (Fla. 1986). Thus, "[t]he yard stick by which jury instructions are measured is clarity, for jurors

must understand fully the law that they are expected to apply fairly." Perriman v. State, 731 So. 2d 1243, 1246 (Fla. 1999). However, we have cautioned that jury instructions need only be sufficient so as to allow the jury to perform its duty. See State v. Bryan, 287 So. 2d 73, 75 (Fla. 1973) ("What is important is that sufficient instructions—not necessarily academically perfect ones—be given as adequate guidance to enable a jury to arrive at a verdict based upon the law as applied to the evidence before them.").

Published with these principles in mind, the Florida Standard Jury Instructions in Criminal Cases are the fruits of an effort to ensure clarity and eliminate imprecision in jury instructions. See Perriman, 731 So. 2d at 1246 ("The charges were designed above all to be accurate and clear—and thus to withstand appellate scrutiny."). Thus, while the standard jury instructions are not binding precedent, they are approved by this Court and enjoy a presumption of correctness. See Bellsouth Telecomms., Inc. v. Meeks, 863 So. 2d 287, 292 (Fla. 2003) (citing Freeman v. State, 761 So. 2d 1055, 1071 (Fla. 2000)).

Against this backdrop, we believe the certified question is better articulated as:

> WHETHER FLORIDA STANDARD JURY INSTRUCTION (CRIMINAL) 3.6(f) IS CONFUSING, CONTRADICTORY, OR MISLEADING WITH RESPECT TO THE DUTY TO RETREAT WHEN THERE IS A QUESTION AS TO WHETHER THE DEFENDANT WAS THE INITIAL AGGRESSOR.

This question is a pure question of law and is, therefore, subject to de novo review.  See Daniels v. State, 121 So. 3d 409, 413 (Fla. 2013).  For the following reasons, we now answer this question in the negative.

We begin our analysis with the underlying law concerning the justifiable use of force upon which the jury was instructed.  In doing so, we must keep in mind the familiar rule that where the intent of the Legislature, as evidenced by a statute, is plain and unambiguous, there is no need for any construction or interpretation of the statute; courts need only give effect to the plain meaning of its terms.  See State v. Egan, 287 So. 2d 1, 4 (Fla. 1973).

In Florida, the laws concerning justifiable use of force are mostly codified in Chapter 776 of the Florida Statutes.[2]  Section 776.012, "Use of force in defense of person," discusses the use of force, both deadly and non-deadly, in defense of person:

> A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force.  However, a person is justified in the use of deadly force and does not have a duty to retreat if:
>
> (1)  He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself

---

2. Having occurred in 2010, the events in this case are governed by the 2010 Florida Statutes.

or another or to prevent the imminent commission of a forcible felony; <u>or</u>

> (2)  Under those circumstances permitted pursuant to s. 776.013.

§ 776.012, Fla. Stat. (2010) (emphasis supplied).

Next, section 776.013, "Home protection; use of deadly force; presumption of fear of death or great bodily harm," contains what is commonly known as the "Stand Your Ground" law:

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

§ 776.013(3), Fla. Stat. (2010).

Finally, section 776.031, "Use of force in defense of others," justifies the use of deadly and non-deadly force in defense of others under certain situations:

> A person is justified in the use of force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to prevent or terminate the other's trespass on, or other tortious or criminal interference with, either real property other than a dwelling or personal property, lawfully in his or her possession or in the possession of another who is a member of his or her immediate family or household or of a person whose property he or she has a legal duty to protect.  <u>However, the person is justified in the use of deadly force only if he or she reasonably believes that such force is necessary to prevent the imminent commission of a forcible felony.  A person does not have a</u>

- 13 -

> duty to retreat if the person is in a place where he or she has a right to be.

§ 776.031 Fla. Stat. (2010) (emphasis supplied).  In addition to providing a defense to criminal charges, chapter 776 also provides immunities from criminal prosecution and civil actions for conduct justified under sections 776.012, 776.013, and 776.031.  See § 776.032(1), Fla. Stat. (2010).

However, section 776.041, "Use of force by aggressor," provides an exception to the above discussed defenses and immunities:

> The justification described in the preceding sections of this chapter is not available to a person who:
>
> (1)  Is attempting to commit, committing, or escaping after the commission of, a forcible felony; or
>
> (2)  Initially provokes the use of force against himself or herself, unless:
>
> (a)  Such force is so great that the person reasonably believes that he or she is in imminent danger of death or great bodily harm and that he or she has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or
>
> (b)  In good faith, the person withdraws from physical contact with the assailant and indicates clearly to the assailant that he or she desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force.

§ 776.041, Fla. Stat. (2010) (emphasis supplied).  The "preceding sections" include those sections pertaining to defense of person, defense of others, the right to stand one's ground, and the associated immunities.  See §§ 776.012-.013, 776.031-.032,

- 14 -

Fla. Stat. Furthermore, with regard to the applicability of the initial aggressor exception to the right to stand one's ground, the "Stand Your Ground" language is consistent with an exception for initial aggressors because, among other conditions, a person may not invoke the right to stand his or her ground unless he or she is "attacked."

We conclude that Standard Jury Instruction (Criminal) 3.6(f) accurately and correctly explains this law to the jury with regard to the factually complex situations where the jury must unwind the facts to determine who was the initial aggressor. Indeed, every other district court to address this question prior to our review, as well as a different panel of the First District, has reached the same conclusion. See Jackson v. State, No. 5D14-2877, 2015 WL 7782600, at *2 (Fla. 5th DCA Dec. 4, 2015) (explicitly rejecting Floyd); Wyche v. State, 170 So. 3d 898, 903-07, 909-11 (Fla. 3d DCA 2015) (Wells, J., specially concurring); Cruz v. State, No. 4D13-1408, 2015 WL 2393281, at *6-8 (Fla. 4th DCA May 20, 2015) (explicitly rejecting Floyd); Woodsmall v. State, 164 So. 3d 696, 697 n.2 (Fla. 5th DCA 2015); Sims v. State, 140 So. 3d 1000, 1003 n.3 (Fla. 1st DCA 2014).[3]

---

3. Although the Sims and Woodsmall courts perceive a distinction between their respective cases and this case because there was a factual dispute as to who was the initial aggressor, those cases are indistinguishable because this case also involves a factual dispute with respect to who was the initial aggressor.

The language employed in both the statutes and in the standard jury instructions confirms this conclusion. First, with respect to the duty to retreat imposed on an initial aggressor before he or she may use deadly force, the statute and the standard jury instructions employ nearly identical language. The same can be said of the language pertaining to the right to stand one's ground. Second, in both the statute and the standard jury instructions, there is no basis to doubt that the "every reasonable means to escape" language only applies if the jury finds the defendant to be the initial aggressor. The First District's failure to recognize this explains its conclusion that this language conflicts with the language concerning the right to stand one's ground. The relevant statutory language provides that "the justification described in the preceding sections . . . is not available to a person who: [i]nitially provokes the use of force against himself or herself, unless . . . he or she has exhausted every reasonable means to escape . . . ." § 776.041(2)(a), Fla. Stat. (2010). Likewise, the standard jury instructions signal a departure from the general rule and clearly state the exception with the language, "However, the use of deadly force is not justifiable if you find: (Defendant) initially provoked the use of force against [himself] [herself], unless: . . . and had exhausted every reasonable means to escape the danger . . . ." Fla. Std. Jury Instr. Crim. 3.6(f). In sum, the standard instructions accurately communicate the law to the jury.

- 16 -

However, we recognize that a determination that the standard instructions are a correct statement of the law is not necessarily the end of our inquiry. Floyd asserts that the jury instructions are nevertheless confusing due to their organization. We disagree.

In this case, where there is sufficient evidence to justify the presentation of an initial aggressor instruction, a reversal of a conviction for utilizing a correct and accurate jury instruction would undermine justice. This is not a case where the jury instructions shift the jury's attention from the issue at hand to a non-issue. Cf. Butler, 493 So. 2d at 453 (holding that the administration of a jury instruction concerning justifiable use of force in one's home was misleading and confusing because the instruction did not relate to the evidence where the crime occurred in the victim's home and the victim denied attempting to use force). To the contrary, the jury instructions here are necessary to focus the jury's attention on the singular pivotal question of fact concerning who was the initial aggressor and what consequences, if any, flow from that determination. In Sims, a separate panel of the First District recognized this when it explained that:

> no error—fundamental or otherwise—resulted from this instruction because . . . it was necessary and proper for the court to inform the jury that Appellant both did (if he was found to be the initial aggressor) and did not (if [the victim] was found to be the initial aggressor) have a duty to retreat.

See 140 So. 3d at 1003 n.3.

- 17 -

Moreover, the justifiable use of force is recognized as a somewhat complex area of law that will necessarily yield complex jury instructions. Considering a defendant's invocation of the "Stand Your Ground" law alone, a jury must make at least four factual findings. The jury must determine (1) whether the defendant was not engaged in unlawful activity; (2) whether he was attacked; (3) whether he was somewhere he had a right to be; and (4) whether he reasonably believed it was necessary to use force.

The question of the applicability of the initial aggressor exception adds even more factual variables to the justifiable use of force equation. With regard to the initial aggressor exception, the jury must determine whether the defendant initially provoked the use of force against himself. If the jury finds that he did, then it must determine: (1) whether he reasonably believed that the provoked force threatened him with danger of death or great bodily harm; (2) whether he reasonably believed that the threatened danger was imminent; and (3) whether he exhausted every reasonable means to escape before using force to defend himself against the provoked force. Unfortunately, the decision process does not end there. In addition to retreating, an initial aggressor defendant may alternatively use justifiable force if he withdrew in good faith. This alternate basis requires the jury to determine: (1) whether he withdrew; (2) whether he communicated his desire to withdraw; (3) whether he did so in good faith; and (4) whether the other person

continued to use force. Thus, when a defendant invokes his right to stand his ground and there are questions concerning who was the initial aggressor, the jury may be instructed to make at least twelve related but independent factual findings.

As a result of these many questions of fact, there may certainly be many correct ways to instruct the jury with regard to organization, terminology, and emphasis. The most important consideration, however, is that the instructions correctly guide the jury, which these do.[4]

We also take this opportunity to note that if Floyd did perceive undue confusion, nothing precluded him from requesting additional or modified instructions. As noted above, standard jury instructions are presumed to be correct. See Bellsouth, 863 So. 2d at 292. However, because this is merely a presumption and during the formulation and approval process this Court does not express an opinion on the correctness of the standard jury instructions, the trial judge still retains the responsibility of correctly charging the jury. See Yohn v. State, 476 So. 2d 123, 126-27 (Fla. 1985). As a result, the trial judge makes the initial

---

4. We recognize that the non-deadly force companion standard jury instructions, Florida Standard Jury Instruction (Criminal) 3.6(g), contain the "Stand Your Ground" language before the initial aggressor language—the reverse of the instructions at issue in this case. While both arrangements of language are correct statements of the law, the Committee on Florida Standard Jury Instructions has proposed amendments to the instructions at issue in this case to address this inconsistency.

determination of the applicable substantive law, and the standard jury instructions, where available, serve merely as guidelines that are subject to the trial judge's modifications. See id. at 127. In other words, even where there are standard jury instructions at play, there is the ability for both parties to engage in a dialogue about properly adjusting instructions that may not fully satisfy the demands of the individual situation. See, e.g., Outlaw v. State, 89 So. 342, 343 (Fla. 1921); Bryant v. State, 932 So. 2d 408, 409-10 (Fla. 2d DCA 2006); Gibbs v. State, 789 So. 2d 443, 444-45 (Fla. 4th DCA 2001).

Floyd's failure to object or raise concerns belies his contention that the instructions were confusing, misleading, or contradictory. A failure to raise a concern or object is an indication that Floyd's counsel did not perceive a problem. See Barker v. State, 518 So. 2d 450, 452 (Fla. 2d DCA 1988) ("The failure to object is a strong indication that, at the time and under the circumstances, the defendant did not regard the alleged fundamental error as harmful or prejudicial." (citing Ray v. State, 403 So. 2d 956 (Fla. 1981)).

Indeed, the record suggests that Floyd had no such concern. In this case, Floyd's counsel discussed the instructions, specifically "the every reasonable means" part of the instructions; repeatedly agreed to the instructions; played an active role in tailoring the instructions; and offered various comments. He even had an opportunity to reflect on the instructions overnight. Despite this extensive

participation in the tailoring of the jury instructions, Floyd's counsel never once raised any concern or objected regarding the interplay between the "Stand Your Ground" language and the "Initial Aggressor" language. Moreover, Floyd's counsel correctly explained the law to the jury during closing arguments, further suggesting that there was no confusion.[5]

In conclusion, we answer the rephrased certified question in the negative because the instructions at issue correctly stated the law. The instructions are not confusing, misleading, or contradictory with regard to the duty to retreat where there is a question of fact as to who was the initial aggressor. As a result, we quash

---

5. Floyd's counsel emphasized to the jury that the "Initial Aggressor" instruction was an exception to the general rule and only applicable if the jury found that Floyd was the initial aggressor:

> The State's argument is that [Floyd] was never justified in any force, much less deadly force. Well. [L]et's look at that, ladies and gentlemen.
> However, the use of deadly force is not justifiable if you find Robert Franklin Floyd initially provoked the use of force against himself.
> And you know that is not the case, ladies and gentlemen.
> Unless the force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger other than using deadly force.
> And we only get this far if you find that Robby Floyd provoked the use of force against himself. And he didn't, ladies and gentlemen.
> But the State has made the argument that's the case. So I'll show you how the evidence supports this exception.

(Emphasis supplied.)

the decision below and remand for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D11-4465

(Santa Rosa County)

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, Giselle Denise Lylen, Assistant Attorney General, and Charmaine Millsaps, Assistant Attorney General, Tallahassee, Florida,

for Petitioner

Michael Robert Ufferman of the Michael Ufferman Law Firm, P.A., Tallahassee, Florida,

for Respondent

Karen Marcia Gottlieb, Coconut Grove, Florida, and Sonya Rudenstine, Gainesville, Florida,

for Amicus Curiae Florida Association of Criminal Defense Lawyers