NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

TREVOR DOOLEY,           )
                                  )
         Appellant,      )
                                  )
v.                         )      Case No. 2D17-368
                                  )
STATE OF FLORIDA,    )
                                  )
         Appellee.      )
_____)

Opinion filed April 3, 2019.

Appeal from the Circuit Court for
Hillsborough County; Ashley Moody, Judge.

William R. Ponall of Ponall Law, Maitland,
for Appellant.

Ashley Moody, Attorney General,[1]
Tallahassee; Brandon R. Christian and
Bilal Ahmed Faruqui (substituted as
counsel of record) Assistant Attorneys
General, for Appellee.


LUCAS, Judge.

        Trevor Dooley and David James got into an argument over whether a

teenager should be allowed to skateboard on a basketball court. By the end of the

---

[1]Briefing and argument in this case were concluded prior to Ashley Moody's election as Attorney General.

encounter, Mr. James had been shot dead by Mr. Dooley.  We are called upon to decide whether the jury in Mr. Dooley's trial was given a fundamentally erroneous instruction about Mr. Dooley's "Stand Your Ground" defense under sections 776.012 and 776.013(3), Florida Statutes (2010).  Initially, the State conceded error on this issue, but following the issuance of an opinion from this court remanding the case for a new trial, the State filed a motion for rehearing withdrawing its concession.  This court, in turn, withdrew its prior opinion and, pursuant to Florida Rule of Appellate Procedure 9.141(d), granted Mr. Dooley's petition for a new appeal solely as to the issue of fundamental error in the jury instructions.  See Dooley v. State, 206 So. 3d 87 (Fla. 2d DCA 2016).

With the benefit of a record, briefing, and oral argument, we must now agree with Mr. Dooley that the instructions provided to his jury concerning his defense to the charges of manslaughter and openly displaying a firearm were fundamentally erroneous.  We explain why below.

I.

On September 26, 2010, Mr. James and his then eight-year-old daughter were playing basketball at a park in the Twin Lakes subdivision in Valrico.  A couple was playing tennis on an adjacent tennis court.  And a teenager, S.A., was skateboarding.  S.A. had asked Mr. James if he had any objection to his skateboarding, and Mr. James replied he did not.

Mr. Dooley lived in a house across the street from the park.  Spotting S.A. from his garage, he began yelling at S.A., "You're not allowed to skateboard," or words to that effect.  As S.A. started to leave, Mr. James responded to Mr. Dooley to show him

where the signs prohibiting skateboarding were, because he had told S.A. it was alright with him for S.A. to keep skating. Mr. Dooley returned to his garage but then emerged a couple of minutes later and crossed the street to the edge of the basketball court. Mr. James approached Mr. Dooley, and the two men had a terse and heated argument. According to the testimony of the couple on the tennis court (who, by this time, had stopped playing to watch what was happening), Mr. Dooley lifted his shirt, revealing the butt of a gun, and said "fuck you" to Mr. James. All the witnesses who testified, including Mr. Dooley who testified in his own defense, agreed that Mr. Dooley then turned his back on Mr. James and began to walk away toward his house. He made it about four or five steps when Mr. James grabbed him from behind and turned him around to continue the argument. The testimony was in conflict about what precisely happened next, but suffice to say, the two began to wrestle. During the struggle, Mr. Dooley drew his Kel-Tec 32 semiautomatic pistol from his pants, Mr. James tried to grab it with a hand, and Mr. Dooley fired a single shot. The bullet went through Mr. James' chest, and he died shortly thereafter.

Mr. Dooley was subsequently charged with one count of manslaughter with a weapon under sections 782.07(1) and 775.087(1)(b), Florida Statutes (2010), one count of improper exhibition of a firearm pursuant to section 790.10, Florida Statutes (2010), and one count of openly displaying a firearm under section 790.053. Mr. Dooley asserted a claim of immunity pursuant to section 776.032(1), Florida Statutes (2010) ("A person who uses or threatens to use force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in such conduct and is immune from criminal prosecution and civil action for the use or threatened use of such force by the person . .

. ."), which the circuit court denied following an evidentiary hearing.[2]  His case proceeded to a jury trial on November 13, 2012, and the defense was again brought before the jury.

With minor discussion, both the State and the defense agreed to utilize Standard Jury Instruction 3.6(f) to govern Mr. Dooley's Justifiable Use of Deadly Force defense.  That instruction, as given, amalgamated sections 776.012(1) and 776.013(3) together into a single instruction.  In pertinent part, it read as follows:

> An issue in this case is whether the defendant acted in self-defense.  It is a defense to the offense with which Trevor E. Dooley is charged if the death of David Kenneth James resulted from the justifiable use of deadly force.
>
> . . . .
>
> The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting
>
> > 1)      Another's attempt to murder him or
> >
> > 2)      Any attempt to commit aggravated battery on a person 65 years of age or older or aggravated battery upon him.
>
> Additionally, a person is justified in using deadly force if he reasonably believes that such force is necessary to prevent
>
> > 1)      Imminent death or great bodily harm to himself, or

---

[2]Pursuant to <u>Dennis v. State</u>, 51 So. 3d 456, 463 (Fla. 2010), Mr. Dooley had filed a motion to dismiss, which precipitated what is now often referred to as a "Stand Your Ground hearing" before the presiding judge.  We make no comment about any aspect of that hearing.

2)      The imminent commission of aggravated battery on a person 65 years of age or older or aggravated battery against himself.

However, the use of deadly force is not justifiable if you find:

1)      Trevor E. Dooley initially provoked the use of force against himself unless:

a)      The force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger, other than using deadly force on David Kenneth James; or

b)      In good faith the defendant withdrew from physical conduct with David Kenneth James and clearly indicated to David Kenneth James that he wanted to withdraw and stop the use of deadly force but David Kenneth James continued or resumed the use of force.

In deciding whether the defendant was justified in using deadly force you must judge him by the circumstances by which he was surrounded at the time the force was used. The danger facing the defendant need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.

*If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force*, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony such as aggravated battery on a person 65 years of age or older or aggravated battery.

. . . .

If you find that the defendant who because of threats or prior difficulties with David Kenneth James had reasonable grounds to believe he was in danger of death or great bodily harm at the hands of David Kenneth James, then the defendant had the right to arm himself. However, the defendant cannot justify the use of deadly force if after arming himself he renewed his difficulty with David Kenneth James when he could have avoided the difficulty. *Although as previously explained, if the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat.*

. . . .

If in your consideration of the issue of self-defense, you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you should find the defendant not guilty.

However, if from the evidence you are convinced that the defendant was not justified in the use of deadly force, you should find him guilty if all of the elements of the charge have been proved.

(Emphasis added.) The verdict form, which was stipulated between Mr. Dooley and the State, did not include any special interrogatory findings regarding any aspect of Mr. Dooley's self-defense claim; rather, it simply asked whether the jury found Mr. Dooley guilty or not guilty on each of the three charges and whether Mr. Dooley had been carrying, displaying, using, threatening to use, or attempting to use a firearm in connection with the manslaughter charge.

During closing statements, the State and the defense largely focused their presentations on various disputes in the evidence adduced at trial. However, at one point, the prosecuting attorney did weigh in on his view of the legal elements underlying Mr. Dooley's defense:

- 6 -

He's in a park with children and he brings a gun and he flashes it and then he draws it out. And this is really the stand your ground part. If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force. . . . Well think about it, ladies and gentlemen. If you [are] not engage[d] in an unlawful activity, the minute he went into that park and he showed that gun to David James and said, "F you. Fuck you. Screw you" whatever, he's committed a crime. That's a crime. It's called improper exhibition of a weapon. And the minute he did that he's not entitled to that stand your ground. Because he is no longer engaged in lawful activity. He's committing a crime. *So that stand your ground that you've heard all about, doesn't apply to him because he's already violated the law.* And ask yourself, and that's part of the law.

(Emphasis added.) Ultimately, the jury found Mr. Dooley guilty of all three counts as charged.

In the appeal now before us, Mr. Dooley acknowledges that he did not raise a substantive objection to the use of Standard Jury Instruction 3.6(f) during his trial. However, he contends the instruction was fundamentally erroneous because in two separate paragraphs—that were emphasized by the assistant state attorney in the State's closing statement—his defense was improperly curtailed by the issue of whether Mr. Dooley had been engaged in "unlawful activity." While that limitation may pertain to section 776.013(3), Mr. Dooley argues, there was no such limitation on the defense available under section 776.012(1). Because the instruction failed to distinguish between the two statutory sections and their respective elements, the jury was erroneously led to believe that if indeed Mr. Dooley unlawfully displayed his pistol, he could not avail himself of any part of his Stand Your Ground defense.

We must agree with Mr. Dooley's argument.

II.

- 7 -

We observe two points at the outset. The parties stipulated to using a standard jury instruction on the issue of Mr. Dooley's defense. And Mr. Dooley never raised an objection along the line of the argument he now raises. These are both important concerns for purposes of Mr. Dooley's appeal, but they are not dispositive. Although a standard jury instruction such as the one at issue here has something akin to a presumption of correctness, "the trial judge still retains the responsibility of correctly charging the jury." State v. Floyd, 186 So. 3d 1013, 1022 (Fla. 2016).[3] That responsibility includes giving instructions that are not "confusing, contradictory, or misleading." Butler v. State, 493 So. 2d 451, 452 (Fla. 1986). "[T]he yard stick by which jury instructions are measured is clarity, for jurors must understand fully the law that they are expected to apply fairly." Floyd, 186 So. 3d at 1018 (quoting Perriman v. State, 731 So. 2d 1243, 1246 (Fla. 1999)). So, too, while the lack of an objection may indicate that there is no perceptible problem with a standard instruction, Floyd, 186 So. 3d at 1023, an appellate court can still review the content of a jury instruction for fundamental error, see Reeves v. State, 647 So. 2d 994, 995 (Fla. 2d DCA 1994) ("[A] misleading jury instruction constitutes both fundamental and reversible error subject to

---

[3]Pinning the precise degree of assumed correctness to approved standard jury instructions seems to be an exercise of elusive measurement. On the one hand, the Florida Supreme Court has held that standard jury instructions "are published under this Court's authority and are presumed to be correct." BellSouth Telecomms., Inc. v. Meeks, 863 So. 2d 287, 292 (Fla. 2003) (citing Freeman v. State, 767 So. 2d 1055, 1071 (Fla. 2000)). On the other hand, that pronouncement has come to be tethered to so many qualifications it leaves one to wonder whether what remains could truly be said to be a presumption. In Floyd, for example, the court noted that when it approves a standard instruction it does not express an opinion on the instruction's correctness, that standard instructions "serve merely as guidelines that are subject to the trial judge's modifications," and that the failure to timely object to an instruction may have some bearing on whether the jury instruction is perceived as confusing or misleading. 186 So. 3d at 1022-23.

appellate review even in the absence of an objection." (citing <u>Carter v. State</u>, 469 So. 2d 194, 196 (Fla. 2d DCA 1985))). The Florida Supreme Court summarized in <u>Roberts v. State</u>, 242 So. 3d 296 (Fla. 2018), that

> [i]n order for jury instructions to constitute fundamental error, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error" and "occurs only when the omission is pertinent or material to what the jury must consider in order to convict."

<u>Id.</u> at 298 (quoting <u>State v. Delva</u>, 575 So. 2d 643, 644-45 (Fla. 1991)).

The standard instruction was fundamentally erroneous in this case. The confusion this instruction created can be discerned by first examining how the versions of sections 776.012(1) and 776.013(3) in effect at the time of this incident interacted with each other. Both sections are part of the same defense; but they held subtle—and important—distinguishing characteristics, a point we explained at length in <u>Little v. State</u>, 111 So. 3d 214 (Fla. 2d DCA 2013):

> We conclude that the plain language of sections 776.012, 776.013, and 776.032 can be understood as granting immunity to a person who qualifies under either section 776.012(1) or 776.013(3). . . .
>
> . . . .
>
> Section 776.013(3) applies when a person is (1) not engaged in an unlawful activity and (2) attacked in any place outside the "castle" as long as (3) he or she has a right to be there. A person who does not meet these three requirements would look to section 776.012(1) to determine whether the use of deadly force was justified. The presumptions in sections 776.013(1) and (4) apply only when a person is attacked in the "castle." And the presumption in section 776.013(1) does not apply if the person was engaged in an unlawful activity. <u>See</u> § 776.013(2)(c).

The requirements under sections 776.012(1) and 776.013(3) are not identical. A person proceeding under section 776.013(3) would have to prove that he or she reasonably believed the use of deadly force was "necessary . . . to prevent death or great bodily harm . . . or to prevent the commission of a forcible felony." Under section 776.012(1), a person would have to prove that he or she reasonably believed the use of deadly force was "necessary to prevent *imminent* death or great bodily harm . . . or to prevent the *imminent* commission of a forcible felony." (Emphasis added.)

As for criminal immunity, a person engaged in an unlawful activity would not be entitled to claim immunity under section 776.032(1) based on the use of force as permitted in section 776.013(3). But section 776.013(3) provides only one means of obtaining immunity under section 776.032(1). Section 776.012(1) provides another means of obtaining immunity for individuals who would not qualify for immunity under section 776.013(3). And section 776.032(1) expressly provides for immunity based on the use of force as permitted in section 776.012.

Id. at 219-21. We concluded in Little that while the defendant's status of being a felon in illegal possession of a firearm may have precluded him from availing himself of the protection of section 776.013(3) in his second-degree murder trial, he could still seek immunity based on section 776.012(1). Id. at 222.

The district courts of appeal have universally agreed on this point: what distinguishes 776.012(1) from 776.013(3)—in particular, whether the defendant had been engaged in "unlawful activity" at the time of the threat—impacts the viability of a Stand Your Ground defense. See generally Andujar-Ruiz v. State, 205 So. 3d 803, 806-07 (Fla. 2d DCA 2016) ("[B]ecause [Appellant] was entitled to raise a defense under section 776.012(1), the trial court's instruction that he had a duty to retreat if he was engaged in unlawful activity effectively deprived [Appellant] of his sole defense and constituted fundamental error."); Little, 111 So. 3d at 219, 221 (concluding that immunity

- 10 -

applies to a person who qualifies under either section 776.012(1) or 776.013(3), therefore the defendant's status as a felon in illegal possession of a firearm did not preclude a claim of immunity under section 776.012(1) and the trial court erred in denying motion to dismiss on the basis that the defendant was precluded from seeking immunity because he was engaged in an unlawful activity); McGriff v. State, 160 So. 3d 167, 168 (Fla. 1st DCA 2015) (holding that the trial court abused its discretion when it instructed the jury that "if [Appellant] was engaged in an unlawful activity, [his] use of deadly force was not justified if he could have reasonably and safely avoided the use of deadly force by retreating" because it was an "incorrect statement of then-existing law" where section 776.012(1) does not provide for a duty to retreat); Miles v. State, 162 So. 3d 169, 171-72 (Fla. 5th DCA 2015) (concluding that the trial court erred in determining that the defendant was not entitled to immunity because he was engaged in unlawful activity because "under the prior Stand Your Ground law, a defendant could assert immunity under section 776.012 even if he or she was engaged in an unlawful act at the time"); Dorsey v. State, 149 So. 3d 144, 147 (Fla. 4th DCA 2014) (concluding that the instruction regarding the defendant's duty to retreat was fundamental error because reference to the defendant's duty to retreat was unnecessary as the defendant did not have a duty to retreat under section 776.012(1)); Rios v. State, 143 So. 3d 1167, 1170 (Fla. 4th DCA 2014) (holding that the trial court instructing the jury on duty to retreat was fundamental error because the defendant was entitled to protection of "Stand Your Ground law" pursuant to section 776.012(1) and the "jury instruction, which was not necessary because Defendant did not have a duty to retreat under Florida's Stand Your Ground law, effectively eliminated Defendant's sole affirmative defense").

The problem with the instruction in the case before us is that there was nothing whatsoever to guide the jury through the distinctions between sections 776.012(1) and 776.013(3)—or even alert the jury that the two sections were distinct—where both parts of Mr. Dooley's Stand Your Ground defense were presented together.[4] The substance of both sections were essentially lumped together within the same instruction. Accord Little, 111 So. 3d at 223 (Northcutt, J., concurring) ("[W]hatever we may or may not think about the existence of meaningful distinctions between the statutes, we cannot doubt that the legislature intended them to be independent justifications for the use of deadly force."). There was no direction as to how the differing elements of sections 776.012(1) and 776.013(3) interacted for purposes of a Stand Your Ground defense. So one would have read this instruction—in which section 776.013(3)'s "unlawful activity" qualification appears twice in separate paragraphs immediately following section 776.012(1)'s imminent threat instruction—as a singular, unitary set of elements.[5] Certainly, it appears that was how the State understood the instruction in presenting closing arguments to the jury.

------

[4]Neither the State nor Mr. Dooley ever moved to sever counts two and three from the manslaughter charge in count one.

[5]In some respects, the confusion here resembles that sometimes seen with the use of asyndetons—the omission of conjunctive or disjunctive signals within a list—which "can suggest the essential unity of the items . . . . [or] can also be used to evoke a sense of disorder." See Encyclopedia of Rhetoric and Composition: Communication from Ancient Times to the Information Age 41 (Theresa Enos ed., 1996); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 119 (2012) ("Sometimes drafters will omit conjunctions altogether between the enumerated items . . . . This technique is termed asyndeton . . . . But because such a construction could be read as a disjunctive formulation, most drafters avoid it.").
We would also note that the instruction, as it was given, introduces the term "duty to retreat" to the jury by stating when that duty (whatever a juror might understand it to be) would not arise. This lingering reference is likely due to the fact that

- 12 -

Thus, the instruction, as presented in this case, would lead one to conclude that Mr. Dooley's right to stand his ground "and meet force with force" was, in all instances, predicated on whether he had been engaged in unlawful activity. And that was simply not true under the applicable version of section 776.012(1).[6] See Andujar-Ruiz, 205 So. 3d at 806-07; Little, 111 So. 3d at 221; McGriff, 160 So. 3d at 168; Miles, 162 So. 3d at 171-72; Dorsey, 149 So. 3d at 147; Rios, 143 So. 3d at 1170. Mr. Dooley would have been deprived of his only defense at trial to the charges of manslaughter and openly displaying a firearm if the jury concluded, as it ultimately did, that he had been engaged in unlawful activity when he resorted to using deadly force.

III.

As the Florida Supreme Court aptly observed in Floyd, "the justifiable use of force is recognized as a somewhat complex area of law that will necessarily yield complex jury instructions." 186 So. 3d at 1022. The trial court did not have the benefit

_____

prior to 2005, a "duty to retreat" existed in Florida common law and was formerly a substantive part of the self-defense instruction. That duty was effectively supplanted by the Stand Your Ground law. See Kumar v. Patel, 227 So. 3d 557, 559 (Fla. 2017) ("The Stand Your Ground law in Florida eliminates the common law duty to retreat before using force in self-defense . . . .").

[6]Section 776.012 was amended, effective June 20, 2014, so that that section would, henceforth, apply only to "[a] person . . . not engaged in a criminal activity." See ch. 2014–195, § 3, Laws of Fla. We agree with the Fourth District's conclusion that this amendment was substantive in nature, see Dorsey, 149 So. 3d at 146 n.2; Rios, 143 So. 3d at 1170 n.3, so that the change in this part of the defense would not affect Mr. Dooley's case on remand. See Smiley v. State, 966 So. 2d 330, 335, 337 (Fla. 2007) (concluding that amendment to section 776.013 incorporating "no duty to retreat" was a substantive change in the law "because it alter[ed] the circumstances in which it is considered a criminal act to use deadly force without first needing to retreat" and, that therefore, "article X, section 9 of the Florida Constitution makes it constitutionally impermissible for section 776.013 to receive retroactive application").

- 13 -

of our decision in <u>Little</u> when it gave this instruction in Mr. Dooley's case. Unfortunately, the instruction that was given improperly conflated, and thereby confused, the statutory distinctions we discerned in <u>Little</u>. And so we must reverse Mr. Dooley's judgments and convictions for manslaughter with a weapon and openly carrying a firearm because the instruction pertaining to his defense to those charges was fundamentally erroneous. We remand his case for a new trial on those counts.

However, from our review of the record in this case, we cannot conclude that this error impacted Mr. Dooley's conviction for improper exhibition of a weapon.[7] If, as it appears, the jury accepted the testimony that Mr. Dooley first flashed the butt of his pistol at Mr. James in a threatening manner before their argument had turned into an altercation, then the erroneous Stand Your Ground instruction would not appear to constitute a defense to that offense. On cross-examination, Mr. Dooley stated unequivocally that he felt neither alarmed nor threatened by Mr. James when Mr. James asked to see where the no skateboarding signs were. And none of the remaining

---

[7]Section 790.10 defines improper exhibition of a firearm as follows: "If any person having or carrying any . . . firearm . . . shall, in the presence of one or more persons, exhibit the same in a rude, careless, angry, or threatening manner, not in necessary self-defense, the person so offending shall be guilty of a misdemeanor of the first degree." Section 790.053(1) prohibits openly carrying a firearm, which is defined as "openly carry[ing] on or about his or her person any firearm . . . . It is not a violation of this section for a person licensed to carry a concealed firearm as provided in s. 790.06(1), and who is lawfully carrying a firearm in a concealed manner, to briefly and openly display the firearm to the ordinary sight of another person, unless the firearm is intentionally displayed in an angry or threatening manner, not in necessary self-defense." The State never explained how counts 2 and 3 were distinguished in this case (and neither party provided us with a copy of the charging instrument in the record). There were no interrogatory questions within Mr. Dooley's verdict form. However, it appears clear to us that the conviction for improper exhibition was predicated on the evidence that Mr. Dooley unlawfully displayed the butt of his pistol in a threatening manner at Mr. James prior to the physical struggle, which ended when Mr. Dooley drew his gun and shot Mr. James.

- 14 -

witnesses described Mr. James' actions—prior to the physical altercation with Mr. Dooley—as threatening.  Mr. Dooley has not asserted that the error in this jury instruction would pertain to count 2 of his criminal prosecution, much less explain how. Accordingly, we affirm his conviction as to that count.

Affirmed in part; reversed in part; remanded.


NORTHCUTT and KELLY, JJ., Concur.