CASANUEVA, Chief Judge.
 

 Max Wesley Horn, Jr., filed a petition for writ of certiorari asking this court to quash the trial court’s order denying him immunity from prosecution. We deny the petition. However, we write to discuss and approve of the trial court’s procedures in determining that Mr. Horn was not entitled to immunity under section 776.032, Florida Statutes (2007).
 

 Facts
 

 On March 29, 2008, Mr. Horn shot and killed Joseph Martel, resulting in a charge of second-degree murder. Mr. Horn claimed statutory immunity based upon section 776.032, (commonly known as the “Stand Your Ground” Law), in hopes of avoiding prosecution. The trial court conducted an evidentiary hearing to learn the facts surrounding Mr. Martel’s death and determined, by a preponderance of the evidence, that Mr. Horn was not entitled to immunity from prosecution.
 

 The transcript of the evidentiary hearing is not in this court’s record, but the trial court’s extensive written order contains a section detailing the evidence pre
 
 *838
 
 sented, and discovery depositions fill in some background information. Mr. Horn and Mr. Martel had had several verbal confrontations over the course of a day, during New Port Richey’s annual “Chasco Fiesta” celebration. Mr. Horn testified that Mr. Martel threatened his sister during the penultimate confrontation. Mr. Horn had a heart condition and could not fight for fear of a heart attack,
 
 [1]
 
 so he lifted his shirt to display a firearm and told Mr. Martel, “I’ll shoot you.” Mr. Martel walked away but walked back shortly thereafter. Mr. Horn testified that Mr. Martel then threatened to kill Mr. Horn and his associates and told him that “you better pull that gun.” Some witnesses testified that Mr. Martel then punched Mr. Horn in the face or forehead, but the witnesses nearest the incident (aside from Mr. Horn) said no punches were thrown.
 
 [2]
 
 However, it was undisputed that Mr. Horn then fired six shots into Mr. Martel, at which point the gun jammed. Mr. Horn maintained that Mr. Martel was still walking towards him trying to get the gun after four shots, but at least one other witness stated that Mr. Horn fired the last two shots down at Mr. Martel while he lay on the ground. One witness testified that Mr. Horn said he shot Mr. Martel because Mr. Martel was “stalking his sister.”
 

 Analysis
 

 Section 776.032(1) authorizes a person to use force in defense in certain situations. The justifiable use of that force is declared “immune from criminal prosecution.”
 
 Id.
 
 In turn, the legislature broadly defined the term “criminal prosecution” to include “arresting, detaining in custody, and charging or prosecuting the defendant.”
 
 [3]
 

 Id.
 
 Because Mr. Horn has already been arrested and charged with a criminal homicide, our focus is upon his pending prosecution. Section 776.012, titled “Use of force in defense of person,” provides the limits of justifiable force in this case. Pursuant to this section, a person is justified in using
 
 deadly force
 
 and is under no duty to retreat when he “reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself.”
 

 Despite section 776.032’s broad temporal application, running from before arrest through trial, there is no legislative guidance as to the statute’s implementation. Thus far, two other district courts have examined the issues presented by the statute and have reached differing results regarding the proper procedures to follow.
 

 In
 
 Peterson v. State,
 
 983 So.2d 27, 28 (Fla. 1st DCA 2008), the First District held that “a criminal defendant claiming protection under the statute must demonstrate by a preponderance of the evidence that he or she is immunized from prosecution.” In reaching this result, the court rejected the State’s argument that the trial court should treat a motion filed to determine immunity pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). In
 
 Velasquez v. State,
 
 9 So.3d 22 (Fla. 4th DCA 2009), the Fourth District disagreed with
 
 *839
 
 the First District, holding instead that a petition seeking immunity under section 776.032 should be treated as a motion to dismiss pursuant to rule 3.190(c)(4) and denied when “the facts are in dispute.” The court also stated, “We recognize the efficacy of the procedure outlined in
 
 Peterson,
 
 but disagree that it is within our province to create a process sanctioned neither by statute nor existing rule.”
 
 Velasquez,
 
 9 So.3d at 24.
 

 We agree with the Fourth District that a district court has no authority to create a rule of criminal procedure. However, unlike the Fourth, we do not think rule 3.190(c)(4), setting forth the procedure for a motion to dismiss, is appropriately applied to a motion or petition to determine immunity under section 776.032. Instead, we hold that such a motion falls under the general authority granted to trial courts to hear and rule upon motions necessary to resolve criminal cases.
 
 [4]
 
 Consequently, a motion or petition filed under section 776.032 must comply with the general requirements of rule 3.190(a) for all pretrial motions. A motion to dismiss under rule 3.190(c)(4) would be a second step, appropriate if the State continued prosecution of a defendant after he earned immunity under section 776.032.
 

 In the case at bar, the trial court held an evidentiary hearing in which the parties presented live testimony from eyewitnesses, including the defendant. The court weighed the credibility of the witnesses, made numerous findings of fact with a substantial, competent basis for its factual findings, and applied the preponderance of the evidence standard in denying Mr. Horn’s petition seeking immunity. We conclude that the trial court’s procedures in this case would be appropriate for most, if not all, cases in which the defendant seeks immunity under section 776.032(1). We agree with the First District — that our legislature intended to create immunity from prosecution rather than an affirmative defense and, therefore, the preponderance of the evidence standard applies to immunity determinations.
 
 See Peterson,
 
 983 So.2d at 29.
 

 To the extent that our conclusions conflict with the Fourth District’s opinion in
 
 Velasquez,
 
 we certify conflict.
 

 Petition denied.
 

 ALTENBERND and KHOUZAM, JJ., Concur.
 

 [1]
 

 .Mr. Horn’s doctor testified that Mr. Horn had a "weak” heart muscle and that he had recommended that Mr. Horn exercise and lose weight to improve his health. He also testified he had told Mr. Horn that physical stress or a strike to the chest could cause him to have a fainting spell or heart attack. The doctor acknowledged that a strike to the chest could cause anyone the same cardiac problems regardless of their health.
 

 [2]
 

 . It should be noted that nobody appears to have testified that Mr. Martel attempted to hit Mr. Horn in the chest.
 

 [3]
 

 . "By defining 'criminal prosecution' to include the arrest, detention, charging, or prosecution of the defendant, the statute allows for an immunity determination at any stage of the proceeding.”
 
 Velasquez
 
 v.
 
 State,
 
 9 So.3d 22, 24 (Fla. 4th DCA 2009).
 

 [4]
 

 . In
 
 State v. Ford,
 
 626 So.2d 1338, 1345 (Fla.1993), the Florida Supreme Court held, " 'All courts in Florida possess the inherent powers to do all things that are reasonable and necessary for the administration of justice within the scope of their jurisdiction, subject to valid existing laws and constitutional provisions.' " (quoting Roger A. Silver,
 
 The Inherent Power of the Florida Courts,
 
 39 U. Miami L. Rev. 257, 263 (1985)). In that case, the court stated that the trial court would have been within its authority to use an unauthorized procedure to protect a child witness, had it not conflicted with the defendant’s constitutional rights.
 
 Id.