SILBERMAN, Chief Judge.
Aaron A. Little seeks certiorari review of the circuit court’s order denying his motion to dismiss the criminal charge of second-degree murder with a firearm. Little argued that he shot the victim in self-defense and was entitled to immunity from criminal prosecution under section 776.032(1), Florida Statutes (2009), which is part of what is commonly known as the “Stand Your Ground” law. Because this issue involves a determination of whether the circuit court has continuing jurisdiction over Little, see Tsavaris v. Scruggs, 360 So.2d 745, 747 (Fla.1977), we treat the petition for writ of certiorari as a petition for writ of prohibition.[1] We agree with Little that his use of deadly force was justified under the circumstances. We also reject the State’s alternative argument that Little was not entitled to immunity under the Stand Your Ground law because he was engaged in an unlawful activity at the time he used the deadly force. We therefore grant Little’s petition for writ of prohibition.
I. Facts
The incident in question occurred when Little was walking to his girlfriend’s house with his friend, Rashad Matthews. The two men happened upon Matthews’ friend, Terry Lester, who was standing in the driveway of his mother’s home. Lester was leaning into the driver’s door of a vehicle parked in the driveway when Matthews approached and engaged Lester in conversation. Little, who was a stranger to Lester, initially waited for Matthews by the street.
After a few minutes, Little started walking toward the two men. When Little reached the driver’s side of the car, De-mond Brooks jumped out of the back seat. Little knew Brooks, but the two were not friends. Without warning, Brooks pulled two handguns from his waistband, pointed them at Little, and yelled that he was “going to make it rain.” Little believed Brooks was threatening to shoot him, so he ran behind Lester and asked Lester to intervene, or to “get” Brooks. Lester tried to calm Brooks down to no avail.
Lester’s mother, Janet Speed, heard the commotion from inside the house and came to the open front door for a moment. Little used the distraction as an opportunity to obtain shelter and ran into the house. Brooks followed Little but stopped on the second of the three front porch steps. From there, Brooks held his guns down by his sides and yelled through the open door for Little to come outside. Little pressed his back up against the wall, pulled a handgun out of his pants pocket, and held it down by his side. He called to Ms. Speed to “get” Brooks.
*217 Ms. Speed had not seen Little arm himself. Ms. Speed was alerted to the gun by her daughter-in-law, Kimberly, who was also in the room. Little, who was visibly afraid, tried to explain that he was holding the gun because Brooks was threatening to shoot him from outside. Ms. Speed did not want a gun in her house and responded by telling Little to leave. But Brooks was still on the porch step yelling for Little to come outside. Little told Ms. Speed, “I ain’t going out there,” and said something about both men having their “fire.” Ms. Speed called for her son Lester.
Lester then came into the house and ordered Little out. Little begged for Lester to stop Brooks, but Lester offered no help. In fact, Lester appeared to think the situation was funny, because he had been laughing with Brooks as he passed him on his way inside the house.
Seeing no backdoor exit, Little reluctantly exited the house through the front door. Brooks backed up to let Little pass, but Brooks still had his guns down by his sides. Little proceeded cautiously, turning sideways to stay facing Brooks and keeping his gun hidden behind his back. When Little reached the yard, Brooks walked toward him and said something like, “[D]o you know what he did to me?” Little told Brooks to calm down and backed away. Brooks did not take action until Little backed into the car parked in the driveway. Then Brooks raised his guns and pointed them at Little. Little brought his gun around, closed his eyes, and pulled the trigger several times. Brooks dropped to the ground and eventually succumbed to his gunshot wounds. Little fled to his girlfriend’s house.
II. Circuit Court Proceedings
In support of his motion to dismiss, Little argued that he shot Brooks in self-defense and was therefore entitled to immunity under the Stand Your Ground law. The State raised two arguments against the motion: (1) Little was not acting in self-defense because he reengaged Brooks after removing himself from the initial threat, and (2) Little was not entitled to immunity under the Stand Your Ground law because he was engaged in an unlawful activity as a felon in possession of a firearm. The circuit court denied the motion to dismiss, ruling as follows:
The Defendant removed himself from the zone of uncertainty when he entered the home of Janet Speed. The Defendant then chose to arm himself and reengage the decedent, Demond Brooks. The Court at this time has not considered, the issue of whether Defendant’s activity of arming himself was lawful or unlawful and need not address that issue for purposes of making a legal ruling on the matter before the Court.
III. Analysis
A. Standard of Review
In reviewing a petition for writ of prohibition, this court must consider the merits of Little’s motion to dismiss in the same manner as if it were on direct appeal. See Sutton v. State, 975 So.2d 1073, 1077-78 (Fla.2008); Hair v. State, 17 So.3d 804, 805 (Fla. 1st DCA 2009), review denied, 60 So.3d 1055 (Fla.2011). Thus, we review the court’s legal findings de novo and we review the court’s factual findings for competent, substantial evidence. Hair, 17 So.3d at 805.
B. Propriety of the Denial of the Motion to Dismiss on the Merits
The Stand Your Ground law is codified in chapter 776, Florida Statutes (2009). Section 776.032(1) grants criminal immunity to persons using force as permit *218 ted in sections 776.012, 776.013, or 776.031. In this case, Little argued he was entitled to immunity under section 776.032(1) because his use of force was permitted in section 776.012(1). Section 776.012(1) authorizes the use of deadly force when a defendant “reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.” A defendant must establish entitlement to immunity under the Stand Your Ground law by a preponderance of the evidence. Horn v. State, 17 So.3d 836, 839 (Fla. 2d DCA 2009).
In determining that Little was not entitled to immunity under the Stand Your Ground law, the circuit court concluded that Little removed himself from the imminent threat of death or great bodily harm by going into Ms. Speed’s house but “chose to arm himself and re-engage” Brooks. Thus, the court determined that Little was not “in the zone of uncertainty.” See Montanez v. State, 24 So.3d 799, 801-03 (Fla. 2d DCA 2010) (holding that circuit court properly denied criminal immunity to a defendant who shot the victim after the victim had driven his car at the defendant and his employee because “the zone of uncertainty” had already passed when the defendant and the employee had gotten out of the vehicle’s path and there was therefore no threat of imminent death or great bodily harm).
Little argues that the circuit court’s ruling is erroneous because it is not supported by competent, substantial evidence. Little acknowledges that he had removed himself from Brooks’ line of fire by entering Ms. Speed’s home. He argues that he did not choose to leave Ms. Speed’s home but was forced to do so. He also claims that he did not reengage Brooks but made every attempt to avoid an encounter.
We agree that the circuit court’s ruling is not supported by the evidence. Specifically, there is no evidence whatsoever that Little reengaged Brooks. The evidence establishes that Little was afraid of Brooks and repeatedly asked for help in calming Brooks down. While Little was able to remove himself from the imminent threat of death or great bodily harm by running inside Ms. Speed’s house, Little was ordered outside by Ms. Speed herself and then her son Lester. Little did not see a backdoor exit, so he went out the way he came in. Little walked past Brooks with extreme caution and with his gun out of sight. When Brooks started ranting at him, Little implored Brooks to calm down. There is no evidence that Little made any threatening moves toward Brooks or said any threatening words to him. But Brooks raised his guns and pointed them at Little anyway, and Little responded to the threat.
Thus, the circuit court erred in concluding that Little’s use of deadly force was not justified under the circumstances. However, that does not end our analysis because the State has asserted another basis on which to uphold the circuit court’s ruling, or a “tipsy coachman” argument.[2]
C. State’s Tipsy Coachman Argument
The State argues that regardless of whether Little established that his use of deadly force was permitted in section 776.012(1), he was not entitled to immunity under section 776.032(1) because his use of force would not have been permitted in section 776.013(3). The State notes that in order for a person’s use of deadly force to *219 be permitted in section 776.013(3), the person must not be engaged in an unlawful activity. Because Little was a felon in illegal possession of a firearm, the State submits that he was engaged in an unlawful activity and cannot obtain immunity under any of these statutory provisions.
Section 776.032(1) provides, in pertinent part, “A person who uses force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force.... ” Because section 776.032(1) grants criminal immunity to persons using force as permitted in section 776.012, section 776.013, or section 776.031, it should be construed to allow a defendant to claim immunity based on the use of force permitted in any of these provisions. See Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 805 (1927) (“[T]he word ‘or’ is usually, if not always, construed judicially as a disjunctive unless it becomes necessary in order to conform to the clear intention of the Legislature to construe it conjunctively as meaning ‘and.’ ”).
Despite the disjunctive language in section 776.032(1), the State asserts that the legislature did not intend to provide immunity based on the use of force as permitted in section 776.012(1) because section 776.012(1) conflicts with section 776.013(3). According to the State, both sections 776.012(1) and 776.013(3) permit the use of deadly force based on a reasonable belief such force is necessary to prevent imminent death or great bodily harm or the commission of a felony. The State argues that section 776.013(3) limits the justifiable use of deadly force to persons who are not engaged in illegal activity and who are in a place they have a legal right to be. The State asserts that section 776.012(1) cannot provide a separate basis for immunity because it would provide immunity for a person engaged in an unlawful activity and thus render section . 776.013(3) meaningless. We cannot agree.
“A court’s purpose in construing a statute is to give effect to legislative intent, which is the polestar that guides the court in statutory construction.” Larimore v. State, 2 So.3d 101, 106 (Fla.2008). We first look to the plain language of the statute to discern legislative intent. And we must interpret the statute to give meaning to each of its provisions. Id. “ ‘The doctrine of in pari materia is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature’s intent.’ ” Id. (quoting Fla. Dep’t of State v. Martin, 916 So.2d 763, 768 (Fla.2005)).
We conclude that the plain language of sections 776.012, 776.013, and 776.032 can be understood as granting immunity to a person who qualifies under either section 776.012(1) or 776.013(3). To arrive at this conclusion, we will examine the provisions in sections 776.012 and 776.013 in pari materia to determine whether the legislature intended for each section to provide a separate basis for immunity under section 776.032(1). Our analysis will begin with a review of the law governing the justifiable use of deadly force prior to the enactment of the Stand Your Ground law. We will then examine the effect of the enactment of the Stand Your Ground law on that body of law to discern the extent to which the legislature intended to change that law.
Prior to the enactment of the Stand Your Ground law, the justifiable use of deadly force by and against a civilian was governed by section 776.012. Section 776.012, Florida Statutes (2004), permitted the use of deadly force if a person “reasonably believes that such, force is necessary' *220 to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.” Section 776.031 governed the use of force in defense of others, and it permitted the use of deadly force if a person “reasonably believes that such force is necessary to prevent the imminent commission of a forcible felony.” In addition, the Florida Supreme Court recognized a common law duty to retreat that required a person to “retreat to the wall” or use “every reasonable means within his or her power to avoid the danger.” Weiand, v. State, 732 So.2d 1044, 1049, 1050 (Fla.1999). There was an exception to the duty to retreat for a person claiming self-defense in his or her own residence; that exception was part of the “castle doctrine.” [3] Id.
In 2005, the legislature enacted the Stand Your Ground law which amended sections 776.012 and .031 and created sections 776.013 and .032. Ch. 2005-27, §§ 1-4, at 200-02, Laws of Fla. Section 776.012 still permits the justifiable use of deadly force if a person “reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.” § 776.012(1). But the Stand Your Ground law added language permitting the justifiable use of deadly force “[u]nder those circumstances permitted pursuant to s. 776.013.” § 776.012(2). It also eliminated the common law duty to retreat for persons justifiably using deadly force under either section 776.012(1) or 776.013.
Section 776.012, which is entitled “Use of force in defense of person,” now provides as follows:
A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other’s imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or
(2) Under those circumstances permitted pursuant to s. 776.013.
As for section 776.013, it is entitled “Home protection; use of deadly force; presumption of fear of death or great bodily harm.”[4] Subsections (1), (2), (4), and (5) of section 776.013 expand the “castle” to include a dwelling, residence, or occupied vehicle. These subsections all work together to provide for presumptions that make it easier for a person in the “castle” to establish the justifiable use of deadly force. Subsection (1) sets forth a presumption of “a reasonable fear of imminent peril of death or great bodily harm.” § 776.013(1). Subsection (2) sets forth four circumstances in which the presumption in subsection (1) does not apply, including when “[t]he person who uses defensive force is engaged in an unlawful activity.” § 776.013(2)(c). Subsection (4) *221 sets forth a presumption that “[a] person who unlawfully and by force enters or attempts to enter a person’s dwelling, residence, or occupied vehicle is presumed to be doing so with the intent to commit an unlawful act involving force or violence.” § 776.018(4). And subsection (5) defines “dwelling,” “residence,” and “vehicle.” § 776.013(5).
Subsection (3), which is the subsection on which the State focuses, applies to “[a] person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be.” § 776.013(3). It eliminates the duty to retreat for this law-abiding person. It also provides for the use of deadly force by this law-abiding person based upon the reasonable belief “it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.” Id.
We do not agree that there is a conflict between the provisions in sections 776.012(1) and 776.013(3). Section 776.013(3) provides for the justifiable use of deadly force by a law-abiding person outside of the “castle,” but it does not preclude persons who are engaged in an unlawful activity from using deadly force in self-defense when otherwise permitted. In fact, the Stand Your Ground law expressly amended section 776.012 to provide that the use of deadly force is justified under the circumstances set forth in both sections 776.012(1) and 776.013.
Nor do we agree that construing section 776.012(1) as a distinct statute permitting the justifiable use of deadly force would render section 776.013(3) meaningless. Instead, the burden of proof and the entitlement to the various presumptions to assist in meeting that burden varies depending upon which statute applies.
Section 776.013(3) applies when a person is (1) not engaged in an unlawful activity and (2) attacked in any place outside the “castle” as long as (3) he or she has a right to be there. A person who does not meet these three requirements would look to section 776.012(1) to determine whether the use of deadly force was justified. The presumptions in sections 776.013(1) and (4) apply only when a person is attacked in the “castle.” And the presumption in section 776.013(1) does not apply if the person was engaged in an unlawful activity. See § 776.013(2)(c).
The requirements under sections 776.012(1) and 776.013(3) are not identical. A person proceeding under section 776.013(3) would have to prove that he or she reasonably believed the use of deadly force was “necessary ... to prevent death or great bodily harm ... or to prevent the commission of a forcible felony.” Under section 776.012(1), a person would have to prove that he or she reasonably believed the use of deadly force was “necessary to prevent imminent death or great bodily harm ... or to prevent the imminent commission of a forcible felony.” (Emphasis added.)
As for criminal immunity, a person engaged in an unlawful activity would not be entitled to claim immunity under section 776.032(1) based on the use of force as permitted in section 776.013(3). But section 776.013(3) provides only one means of obtaining immunity under section 776.032(1). Section 776.012(1) provides another means of obtaining immunity for individuals who would not qualify for immunity under section 776.013(3). And section 776.032(1) expressly provides for immunity based on the use of force as permitted in section 776.012.
In summary, section 776.032(1) provides for immunity from criminal prosecution for persons using force as permitted in section 776.012, section 776.013, or *222 section 776.031. Because Little was a felon in illegal possession of a firearm, his use of force did not fall within the protections of section 776.013, and therefore, he could not obtain immunity under that statute. See Darling v. State, 81 So.3d 574, 578 (Fla. 3d DCA 2012), review denied, 107 So.3d 403 (Fla.2012); Dorsey v. State, 74 So.3d 521, 527 (Fla. 4th DCA 2011). However, Little sought immunity based on the use of force as permitted in section 776.012(1). His status as a felon in illegal possession of a firearm did not preclude that claim of immunity. And, as set forth above, Little established by a preponderance of the evidence that his use of force was justified to prevent his imminent death or great bodily harm as provided for in section 776.012(1). Accordingly, Little was entitled to immunity under section 776.032(1).
The parties have not cited and we have not located any cases addressing the specific issue presented here. However, we have considered, among other cases, the Fourth District’s decision in State v. Hill, 95 So.3d 434 (Fla. 4th DCA 2012). In Hill, the defendant was charged with aggravated battery with a firearm, possession of a firearm by a convicted felon, and other crimes after he shot a man in the stomach during an altercation over a woman. Id. at 434-35. The defendant filed a motion to dismiss the aggravated battery charge in which he argued that he was entitled to immunity under the Stand Your Ground law based on the justifiable use of force. Id. at 434. He claimed that he was attacked by two men, one of whom had a gun, while sitting on his own porch and that he could not retreat because he was cornered. Id. at 434-35.
The circuit court granted the defendant’s motion to dismiss and rejected the argument that the defendant was precluded from seeking immunity under the Stand Your Ground law because he was engaged in an unlawful activity as a felon in illegal possession of a firearm. Id. at 435. The Fourth District reversed. Id. at 435. The court concluded that the crime of possession of a firearm by a convicted felon qualified as unlawful activity under section 776.013(3). And the court explained that under section 776.013(3) the defendant was not entitled to immunity because he was engaged in an unlawful activity. Id.
The Fourth District has not addressed whether a defendant would be entitled to immunity based on the use of force as permitted in section 776.012(1). As we have already explained, section 776.032(1) provides for immunity based on the use of force as permitted in three separate statutory provisions: section 776.012, section 776.013, or section 776.031. As pertains to the circumstances here, even though Little’s use of force was not permitted in section 776.013(3), it was permitted in section 776.012(1).
D. Certification of Conflict and Question for Resolution by Supreme Court
To the extent that the Fourth District’s decision in Hill can be read as holding that a defendant who is engaged in an unlawful activity is not entitled to immunity under section 776.032(1), we certify conflict. Additionally, we recognize the significance of a determination of whether a defendant is entitled to criminal immunity as well as the ever-increasing attempts to invoke that immunity by persons charged with serious crimes. We therefore certify the following question as one of great public importance:
IS A DEFENDANT WHO ESTABLISHES BY A PREPONDERANCE OF THE EVIDENCE THAT HIS USE OF DEADLY FORCE IS PERMITTED IN SECTION 776.012(1), FLORIDA STATUTES (2009), ENTITLED TO *223 IMMUNITY UNDER SECTION 776.032(1) EVEN THOUGH HE IS ENGAGED IN AN UNLAWFUL ACTIVITY AT THE TIME HE USES THE DEADLY FORCE?
Petition granted.
VILLANTI, J., Concurs.
NORTHCUTT, J. Concurs with opinion.

. We acknowledge that this court has entertained petitions for writ of certiorari addressing the propriety of orders denying motions to dismiss asserting immunity under the Stand Your Ground law. See, e.g., Montanez v. State, 24 So.3d 799 (Fla. 2d DCA 2010); Horn v. State, 17 So.3d 836 (Fla. 2d DCA 2009). However, this court has also expressed uncertainty over whether certiorari is the proper method of review of such orders based on the availability of review on direct appeal of any subsequent conviction. See Montanez, 24 So.3d at 801. We believe that the better avenue for review is a petition for writ of prohibition, which the supreme court has consistently held is an appropriate vehicle to review orders denying motions to dismiss criminal prosecutions based on immunity. See Tsavaris, 360 So.2d at 747; State ex rel. Reynolds v. Newell, 102 So.2d 613, 615 (Fla.1958); State ex rel. Marshall v. Petteway, 121 Fla. 822, 164 So. 872, 874 (1935).

. See generally Johnson v. Allstate Ins. Co., 961 So.2d 1113, 1115 (Fla. 2d DCA 2007) (applying the "tipsy coachman” doctrine).

. The "castle doctrine” has been explained as follows:
[A] person's dwelling house is a castle of defense for himself and his family, and an assault on it with intent to injure him or any lawful inmate of it may justify the use of force as protection, and even deadly force if there exist reasonable and factual grounds to believe that unless so used, a felony would be committed.
Weiand, 732 So.2d at 1049 n. 5 (quoting Falco v. State, 407 So.2d 203, 208 (Fla.1981)).

. The full text of section 776.013 is attached to this opinion as Appendix A.