NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANGEL ANDUJAR-RUIZ,                  )
                                     )
          Appellant,                 )
                                     )
v.                                   )          Case No. 2D15-5304
                                     )
STATE OF FLORIDA,                    )
                                     )
          Appellee.                  )
_____)

Opinion filed November 16, 2016.

Petition Alleging Ineffective Assistance of
Appellate Counsel.  Hillsborough County;
Martha J. Cook, Judge.

Angel Andujar-Ruiz, pro se.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Peter Koclanes, Assistant
Attorney General, Tampa, for Appellee.


KHOUZAM, Judge.

          Angel Andujar-Ruiz has filed a petition under Florida Rule of Appellate

Procedure 9.141(d), arguing that his appellate counsel was ineffective for failing to

argue that the trial court's instruction on Andujar-Ruiz's duty to retreat constituted

fundamental error.  We grant the petition.

A jury convicted Andujar-Ruiz of attempted second-degree murder with a firearm, aggravated battery, and shooting into a vehicle. This court affirmed his judgment and sentences. Andujar-Ruiz v. State, 192 So. 3d 49 (Fla. 2d DCA 2015) (table decision).

Andujar-Ruiz was at a gas station when the victim (his cousin), the victim's girlfriend, and the girlfriend's son arrived together in another vehicle. There was preexisting familial discord between Andujar-Ruiz and the victim. As the victim's vehicle left the station, Andujar-Ruiz followed it. When the cars were stopped at a red light, according to the victim and his girlfriend, Andujar-Ruiz stared at them. The victim became angry, exited his vehicle, and told Andujar-Ruiz to get out of his car and fight like a man. The victim admitted to holding a hammer near Andujar-Ruiz's head and threatening to split his skull during this exchange. The victim also testified that Andujar-Ruiz "threw" his car towards him. The victim then hit Andujar-Ruiz's car with the hammer. Dents in the car hood were observed by other witnesses. The two vehicles left the scene.

According to the victim's girlfriend, approximately ten to twenty minutes later, she observed Andujar-Ruiz's vehicle following them and weaving through traffic to get close. When they stopped at a red light, she called 911 to report that Andujar-Ruiz was following them. While she was on the phone, Andujar-Ruiz abruptly fired four shots into the passenger side of their vehicle, hitting the victim in the hip and the leg.

Andujar-Ruiz painted a different version of events. According to Andujar-Ruiz, less than a minute and a half after he fled the scene where the victim threatened him, the victim's vehicle approached him at a stoplight. A verbal altercation ensued,

- 2 -

and Andujar-Ruiz threatened to call the police. The victim exited his vehicle briefly but returned to get something out of it. Andujar-Ruiz saw something in the victim's hand. He testified that he was not sure exactly what it was but that he thought it was the hammer the victim had previously threatened him with. Andujar-Ruiz fired his gun four times into the passenger door of the victim's vehicle. He stated that he did not want the victim to get out of his car and that the victim could have had anything in his hand.

When Andujar-Ruiz testified, the following transpired on cross-examination:

> Q. You are a convicted felon?
>
> A. Yes.
>
> Q. You are not supposed to have a gun period, right?
>
> A. I guess if that's the law. I am not an expert on the law. I don't know.

The State also elicited testimony that Andujar-Ruiz was previously convicted of felon in possession of a firearm in an unrelated matter.

The written jury instructions provided, in pertinent part, as follows:[1]

> If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of an [a]ggravated [a]ssault.
>
> If you find that the defendant who because of threats or prior difficulties with [the victim] had reasonable grounds to believe that he was in danger of death or great bodily harm at the hands of [the victim], then the defendant had the right to arm himself. However, the defendant cannot justify

_____
[1]The trial court's oral instructions deviated slightly from the written instructions.

- 3 -

the use of deadly force if, after arming himself he renewed his difficulty with [the victim] when he could have avoided the difficulty, although as previously explained if the defendant was not engaged in an unlawful activity and was attacked in any place where he had the right to be, he had no duty to retreat.

So instructed, the jury convicted Andujar-Ruiz of attempted second-degree murder with a firearm, aggravated battery, and shooting into a vehicle. On appeal, counsel did not challenge the jury instructions with regard to Andujar-Ruiz's duty to retreat.

In his petition, Andujar-Ruiz argues appellate counsel was ineffective for failing to argue that fundamental error occurred when the trial court instructed the jury that Andujar-Ruiz had a duty to retreat if he was engaged in unlawful activity. He argues that the instructions given were inconsistent with Florida's Stand Your Ground law,[2] citing Little v. State, 111 So. 3d 214 (Fla. 2d DCA 2013), in which this court held that a defendant engaged in unlawful activity is not precluded from seeking immunity under section 776.012, Florida Statutes (2011),[3] even though the same unlawful activity would prevent him or her from obtaining the immunity under section 776.013. We agree.

In Little, the defendant was ambushed by an attacker wielding two handguns who threatened to "make it rain," which the defendant understood as a threat to shoot him. 111 So. 3d at 216. The defendant fled into a house and withdrew his firearm. Upon seeing the firearm in the defendant's possession, the resident of the

[2]§§ 776.032, .012, .013, Fla. Stat. (2011).

[3]The statute was amended in 2014 to require that the defendant using force or threatening to use force not be engaged in criminal activity. See ch. 2014-195, § 3.

- 4 -

home asked the defendant to leave. Id. at 217. Eventually, the defendant was forced from the home. Upon exiting the home, he attempted to back away from his attacker, hiding his gun behind his back. The attacker raised his firearms at the defendant. The defendant drew his firearm, closed his eyes, and fired several times, killing his attacker. The defendant was charged with second-degree murder with a firearm.

The defendant in Little filed a motion to dismiss arguing that he was entitled to immunity under the Stand Your Ground law as provided for in sections 776.032 and 776.012(1). Section 776.032(1) provides that persons using force as permitted under sections 776.012, 776.013, or 776.031 are "justified in using such force and [are] immune from criminal prosecution and civil action for the use of such force."

The State responded, arguing in part that the defendant was not entitled to immunity because he was engaged in unlawful activity, citing section 776.013(3). That section provides:

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

(Emphasis added.)

Although section 776.013(3) requires that a defendant not be engaged in unlawful activity, as we explained in Little, a defendant's felonious possession of a firearm does not preclude such a defendant from raising a defense under section 776.012(1), which provides:

> A person is justified in using force, except deadly force, against another when and to the extent that the person

reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:

>(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony . . . .

Here, because Andujar-Ruiz was entitled to raise a defense under section 776.012(1), the trial court's instruction that he had a duty to retreat if he was engaged in unlawful activity effectively deprived Andujar-Ruiz of his sole defense and constituted fundamental error. See Dooley v. State, 2D16-29, 2016 WL 6066312 (Fla. 2d DCA October 14, 2016); Dorsey v. State, 149 So. 3d 144, 147 (Fla. 4th DCA 2014).

The Fourth District evaluated similar jury instructions in Dorsey. In Dorsey, with respect to the defendant's duty to retreat, the trial court instructed the jury as follows:

>Now, if you find the Defendant was engaging in an unlawful activity or was attacked in a place where he did not have the right to be, then you must consider if the Defendant had a duty to retreat. If the Defendant was placed in a position of imminent danger of death or great bodily harm and it would have increased his own danger to retreat, then his use of force likely to cause death or great bodily harm was justifiable. Now, a felon in possession of a firearm constitutes unlawful activity.

Dorsey, 149 So. 3d at 145 (emphasis omitted). The Fourth District held that this instruction constituted fundamental error because the defendant did not have a duty to retreat under section 776.012(1) and it "effectively eliminated Defendant's sole affirmative defense." Id. at 147 (quoting Rios v. State, 143 So. 3d 1167, 1170 (Fla. 4th DCA 2014)).

- 6 -

As in Dorsey, the instruction to the jury that Andujar-Ruiz had a duty to retreat constituted fundamental error because it effectively deprived him of his self-defense claim, his sole defense to the charges. "[W]here . . . a trial judge gives an instruction that is an incorrect statement of the law and necessarily misleading to the jury, and the effect of that instruction is to negate the defendant's only defense, it is fundamental error and highly prejudicial to the defendant." Williams v. State, 982 So. 2d 1190, 1194 (Fla. 4th DCA 2008) (alterations in original) (quoting Carter v. State, 469 So. 2d 194, 196 (Fla. 2d DCA 1985)). The trial court's instruction misled the jury by informing it that it was required to find that Andujar-Ruiz retreated before resorting to force, contrary to the plain language of section 776.012(1).

We do not believe that the trial court's later instruction that Andujar-Ruiz had a right to arm himself if he had reasonable grounds to believe that he was in danger of death or great bodily harm at the hands of the victim cured this error because this instruction was also conditioned on Andujar-Ruiz not being engaged in unlawful activity. Rather, this instruction reinforced the erroneous prior instruction that Andujar-Ruiz had a duty to retreat if he was engaged in unlawful activity.

We recognize that in Dorsey, the jury was specifically instructed that a felon in possession of a firearm constituted unlawful activity. While that specific instruction was not given here, the State elicited testimony that Andujar-Ruiz was illegally possessing a firearm at the time of the offense and that he had a prior conviction for felon in possession of a firearm. Because this evidence made clear that Andujar-Ruiz was unlawfully possessing a firearm at the time of the alleged offense, the

- 7 -

trial court's instruction that he had a duty to retreat if he was engaged in unlawful activity still had the effect of negating Andujar-Ruiz's self-defense claim.

The dissent asserts that Andujar-Ruiz's self-defense claim was weak in support of its contention that the petition should be denied. We recognize that "[a] determination as to whether the justifiable use of deadly force instruction constituted fundamental error requires a full review of the record on appeal." Ortiz v. State, 905 So. 2d 1016, 1017 (Fla. 2d DCA 2005). However, we disagree that the relative weight of evidence supporting Andjuar-Ruiz's affirmative defense mandates denial of the petition. If after considering "the effect of the erroneous instruction in the context of the other instructions given, the evidence adduced in the case, and the arguments and trial strategies of counsel," it appears that "the effect of that instruction is to negate the defendant's only defense, it is fundamental error and highly prejudicial to the defendant." Garrett v. State, 148 So. 3d 466, 469 (Fla. 1st DCA 2014) (quoting Smith v. State, 76 So. 3d 379, 383 (Fla. 1st DCA 2011), and Carter v. State, 469 So. 2d 194, 196 (Fla. 2d DCA 1985), respectively), review dismissed, 192 So. 3d 470 (Fla. 2016). Here, Andujar-Ruiz testified in his own defense, but the fact that he was a convicted felon and "not supposed to have a gun, period," was emphasized to the jury during cross-examination. The trial court then instructed the jury that Andujar-Ruiz had a duty to retreat if he was engaged in unlawful activity. Evaluated in full context, the effect of the instruction was to deprive Andjuar-Ruiz of his sole defense. This fact is not diminished by the relative weight of the evidence supporting his theory of defense.

- 8 -

Accordingly, we grant the petition. As a new appeal would be redundant,[4] we reverse Andujar-Ruiz's convictions for attempted second-degree murder with a firearm, aggravated battery, and shooting into a vehicle; vacate his sentences; and remand for a new trial.

Petition granted.

SLEET, J., Concurs.
CRENSHAW, J., Dissents with opinion.

---

[4]As the entire record from Andujar-Ruiz's original appeal is before this court, there is no need to grant another appeal to address the issue of whether the error was fundamental. Cf. Baker v. State, 877 So. 2d 856, 858 (Fla. 2d DCA 2004) (granting petition alleging ineffective assistance of counsel and mandating a new appeal to determine whether the error was fundamental).

CRENSHAW, Judge, Dissenting.

Because I cannot conclude that the trial court's instruction on Andujar-Ruiz's duty to retreat constituted fundamental error under these facts, I must respectfully dissent.

The majority asserts that the instructions constitute fundamental error because they deprived Andujar-Ruiz of his sole defense at trial. In my view, a complete fundamental error analysis leads to the conclusion that the jury instructions did not constitute fundamental error in this case. "Where the challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error only occurs where a jury instruction is 'so flawed as to deprive defendants claiming the defense . . . of a fair trial.' " Martinez v. State, 981 So. 2d 449, 455 (Fla. 2008) (alteration in original) (quoting Smith v. State, 521 So. 2d 106, 108 (Fla. 1988)). Even when self-defense is the defendant's sole defense at trial, "[t]o determine whether fundamental error occurred in the court's instruction to the jury, we must consider 'the effect of the erroneous instruction in the context of the other instructions given, the evidence adduced in the case, and the arguments and trial strategies of counsel.' " Garrett v. State, 148 So. 3d 466, 469 (Fla. 1st DCA 2014) (quoting Smith v. State, 76 So. 3d 379, 383 (Fla. 1st DCA 2011)), review dismissed, 192 So. 3d 470 (Fla. 2016); see also Dooley v. State, 2016 WL 6066312 (Fla. 2d DCA Oct. 14, 2016).

Regarding the effect of the erroneous instructions in the context of the other instructions given, I cannot agree with the majority's conclusion that the trial court's instruction that Andujar-Ruiz had a right to arm himself did not cure the defect. The unlawful activity highlighted by the majority is Andujar-Ruiz's illegal possession of a

- 10 -

firearm. But the instructions given in this case, unlike those given in Dorsey v. State, 149 So. 3d 144, 145 (Fla. 4th DCA 2014), provide that Andujar-Ruiz specifically had the right to arm himself. Having such a right, he would not be engaged in unlawful activity merely by possessing a firearm as a convicted felon under the language used in the jury instructions.

Moreover, the evidence adduced at trial showed that Andujar-Ruiz's claim of self-defense was extremely weak. First, the State introduced the recording of a 911 call wherein the victim's girlfriend gave a live narration of the shooting: she first explained that Andujar-Ruiz was harassing them, but just as she began to give the operator her location, she repeatedly shouted that Andujar-Ruiz had shot the victim. The victim and his girlfriend testified that they had prior family disputes with Andujar-Ruiz; Andujar-Ruiz initially testified that there were no prior problems but then admitted on cross-examination that there were. The victim's girlfriend testified that Andujar-Ruiz had "violently" followed her on two prior occasions, and the victim corroborated this testimony. The State played several recordings of Andujar-Ruiz's conversations from jail. In the first conversation, Andujar-Ruiz asked if the police found anything when they searched his house and explained that he did not know why the police wanted to test his hands for gun residue. Regarding the incident, he stated during the call that "[i]t was early in the morning and [the victim] comes up with a [expletive] hammer. I was like all right [expletive] I went to the house fast. I drove all the way to Sheldon to the Publix and then I turned around (unintelligible)." Andujar-Ruiz contradicted this at trial, testifying that after the hammer incident he simply continued down the road until the victim caught back up with him "not even a minute and a half" later. Andujar-Ruiz's

- 11 -

timeline was further contradicted by the testimony of the victim, the victim's girlfriend, her son, and a police officer who was familiar with the distance it would take to drive from where the hammer incident took place to the scene of the shooting. In the next jail conversation, Andujar-Ruiz attempted to arrange a bribe for the victim:

> Listen that weekend before I go to that court (unintelligible) [the victim's] house and give him something and see what he say, all right?"
>
> . . . .
>
> . . . The one from [the victim] I want you to go with Luz Mari (unintelligible) like a thousand dollars and take it [the victim]. I ain't going to pay my lawyer. You hear me?
>
> . . . .
>
> . . . Go to his house, all right. A thousand dollars (unintelligible) that way they won't go. They are not going to go. I want to make sure --

In a third conversation played for the jury, Andujar-Ruiz again reiterated his intention to bribe the victim not to testify. At trial, Andujar-Ruiz admitted that he initially lied to police by telling them that he was not at the scene of the shooting and that nothing had happened. Andujar-Ruiz's own father testified that Andujar-Ruiz told him that he shot the victim because "[t]hat's what [the victim] deserved" for hitting his car with a hammer. His father also explained that the incident happened because of the prior disputes between the cousins and that he had to force Andujar-Ruiz to turn himself in after he initially refused to do so.

Finally, the arguments at trial did not focus on Andujar-Ruiz's unlawful possession of a firearm or his duty to retreat; instead, they focused on whether or not he was actually in imminent harm and acted in self-defense. Indeed, during closing argument defense counsel explained to the jury:

> The issue is was he justified in having imminent danger that he acted in self-defense at that particular moment. Whether

you are allowed the gun or not is not the issue. Was he justified at that particular moment?

> . . . .

> . . . The instruction[] goes onto read if you consider the defendant because of threats or prior difficulties with [the victim] had reasonable grounds to believe he was in danger of death or great bodily harm at the hands of [the victim] then the defendant had the right to arm himself. Regardless if he's a convicted felon, regardless if he's allowed to have guns or not, if under the circumstances he feels because of the prior difficulties that he had reasonable belief that he was in danger of death or great bodily harm at the hands of [the victim] then the defendant had the right to arm himself. That's the law.

At no point during the trial did anyone ever assert that because Andujar-Ruiz was a convicted felon in possession of a firearm, he had a duty to retreat.

Accordingly, Andujar-Ruiz was not deprived of a fair trial, and the jury was free to consider his theory of self-defense. The jury heard his version of events and rejected that defense at trial. I would deny the petition.