NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

NICHOLAS EADY,                           )
                                         )
            Appellant,                   )
                                         )
v.                                       )        Case No.  2D15-3153
                                         )
STATE OF FLORIDA,                        )
                                         )
            Appellee.                    )
                                         )

Opinion filed October 20, 2017.

Appeal from the Circuit Court for Pasco
County; Pat Siracusa, Judge.

Howard L. Dimmig, II, Public Defender, and
Lauren R. Kiley, Special Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Cornelius C. Demps,
Assistant Attorney General, Tampa, for
Appellee.

BADALAMENTI, Judge.

        Nicholas Eady, a juvenile tried as an adult, appeals his jury conviction for

attempted second-degree murder.  He argues that the trial court erred by instructing the

jury, over his timely objection, that he had a duty to retreat if the jury determined he was

engaged in unlawful activity while defending himself during a brawl.  He claims that this

jury instruction deprived him of his sole defense, which was self-defense pursuant to section 776.012(1), Florida Statutes (2012). Eady asserts that the trial court's refusal to omit the instruction was erroneous because the circumstances underlying Eady's attempted-murder conviction occurred in 2012, whereas the self-defense statute which Eady had invoked did not suggest a duty to retreat until 2014. We agree. Because we cannot conclude that the trial court's error was harmless, we reverse Eady's conviction and remand for a new trial.

## I. FACTS AND PROCEDURAL BACKGROUND

A. The Trial Testimony

In the early morning hours of July 8, 2012, a seventeen-year-old Eady was with a group of his friends at a house party. During the party, some beer belonging to one of Eady's friends went missing. Eady's group confronted a second group of guests about the missing beer, suggesting they might have stolen it. This initial confrontation did not become violent. Eventually, both groups left the first party and proceeded to a second house party.

Joshua Febus and Ryan Leavitt were among the guests in this second group accused of stealing the beer. Outside the location of the second house party, the issue of the missing beer resurfaced between the two groups, and this time, tensions boiled over. Febus testified that he threw the first punch, causing an all-out brawl involving approximately fifteen or twenty people. Eady testified that he tried to break up the brawl but ended up getting attacked by "[a] bunch of people" and stabbed in the hand. Eady further testified that as he was being attacked, he pulled a pocket knife he used for fishing from his pocket to defend himself. Specifically, Eady testified that he

began swinging the pocket knife around at people "in self-defense" because he was "scared for [his] life" and "didn't know what else to do." During the brawl, Febus was stabbed five times in the back and Leavitt was stabbed in the neck. The State charged Eady with attempted second-degree murder for stabbing Leavitt.[1]

B. The Jury Instructions

During the charge conference, Eady's counsel objected to the inclusion of any jury instruction language suggesting that Eady had a duty to retreat if he was engaged in an "unlawful activity." He asserted that he was proceeding under a self-defense theory pursuant to the 2012 version of section 776.012(1), which had no such language. Over defense counsel's timely objection, the trial court instructed the jury that Eady had a duty to retreat if he was "engaged in an unlawful activity," a requirement that did not exist in the 2012 version of section 776.012(1). The court's instruction went as follows:

> If the defendant was <u>not engaged in an unlawful activity</u> and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.

(Emphasis added.)

Eady argues that the trial court's inclusion of the "not engaged in an unlawful activity" charge to the jury undercut his sole defense, which was that he was

---

[1]The State charged Eady with one count of attempted second-degree murder (for stabbing Leavitt) and one count of aggravated battery (for stabbing Febus). After the State's case-in-chief, the trial court granted Eady's motion for judgment of acquittal as to the aggravated battery count. Accordingly, the only charge presented to the jury was for the attempted second-degree murder of Leavitt.

acting in self-defense and had no duty to retreat pursuant to the 2012 version of section 776.012(1).

## II. DISCUSSION

"Where there is any evidence which supports a theory of the defense, a defendant is entitled to have the jury instructed on the law applicable to his theory when he so requests." Wenzel v. State, 459 So. 2d 1086, 1087 (Fla. 2d DCA 1984) (citing Bryant v. State, 412 So. 2d 347, 350 (Fla. 1982)).  While a trial court's refusal to give an instruction in the form requested by the defendant is normally reviewed for abuse of discretion, "the trial court's discretion is limited [in criminal cases] because 'a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support this theory,' " assuming the defendant's theory is legally valid. Williams v. State, 34 So. 3d 768, 770-71 (Fla. 2d DCA 2010) (quoting Worley v. State, 848 So. 2d 491, 492 (Fla. 5th DCA 2003)).

Under the 2012 version of Florida's Stand Your Ground Law,[2] section 776.032(1) provides for immunity from criminal prosecution for any person who uses force as permitted in section 776.012, section 776.013, or section 776.031.  Here, Eady raised his theory of self-defense under the 2012 version of section 776.012.  Although section 776.013 precludes immunity where a person engages in unlawful activity at the time they use force, the version of section 776.012 in effect in 2012 did not.  See Little v. State, 111 So. 3d 214, 221-22 (Fla. 2d DCA 2013).

At the time of Eady's charged criminal conduct in 2012, section 776.012(1) read, in relevant part, as follows:

---

[2]§§ 776.032, .012, .013, Fla. Stat. (2012).

- 4 -

A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:

(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony . . . .

§ 776.012(1). Construing the identical text of section 776.012(1) set forth above, our court has held that this version of section 776.012(1) did not impose a duty to retreat upon a defendant engaged in unlawful activity. See Andujar-Ruiz v. State, 205 So. 3d 803, 806-07 (Fla. 2d DCA 2016) (citing, inter alia, Little, 111 So. 3d at 220-22; Dorsey v. State, 149 So. 3d 144, 147 (Fla. 4th DCA 2014)); cf. Miles v. State, 162 So. 3d 169, 171-72 (Fla. 5th DCA 2015) ("[U]nder the prior Stand Your Ground law, a defendant could assert immunity under section 776.012 even if he or she was engaged in an unlawful act at the time."); Garrett v. State, 148 So. 3d 466, 471 (Fla. 1st DCA 2014) ("The fact that [defendant] was a convicted felon in unlawful possession of a firearm did not apply to the jury's consideration of whether [defendant] had a duty to retreat under section 776.012(1)."); Hill v. State, 143 So. 3d 981, 985-86 (Fla. 4th DCA 2014) (en banc) (holding that the application of section 776.012 is not limited to persons not engaged in unlawful activity); Pages v. Seliman-Tapia, 134 So. 3d 536, 539 (Fla. 3d DCA 2014) (holding that defendant need not establish that he was not engaged in unlawful activity under section 776.012). Indeed, our court explained that an individual may assert self-defense by the use of deadly force under this version of section

776.012(1) with no duty to retreat, even if that defendant was engaged in unlawful activity while standing his ground.  See Andujar-Ruiz, 205 So. 3d at 805.[3]

In Little, this court granted a writ of prohibition in favor of the defendant, holding that the trial court improperly denied his motion for pretrial Stand Your Ground immunity and therefore lacked continuing jurisdiction to prosecute him.  111 So. 3d at 216.  The defendant, Aaron Little, shot an acquaintance in self-defense.  Id. at 217.  Little moved for pretrial immunity and argued that his use of deadly force in self-defense was justified under section 776.012(1).  Id. at 217-18.  Little, however, was a convicted felon who could not legally possess a firearm and thus was engaged in unlawful activity at the time of the shooting.  Id. at 219.  The trial court denied his motion, and he appealed.  Id. at 217.  On appeal to our court, the State argued that Little was not entitled to immunity because he was engaged in unlawful activity under section 776.013(3).  Id. at 218-19.  Our court disagreed and held (1) that a person may pursue immunity if they qualify "under either section 776.012(1) or 776.013(3)"; (2) that section 776.012(1) does not preclude immunity where the person who uses force engaged in unlawful activity; and (3) that any person who did not meet the requirements of section 776.013(3) could look to section 776.012(1) as "another means of obtaining immunity." See id. at 219-22.

Three years later, our court applied the holding of Little to the identical versions of section 776.012(1) and section 776.013(3) that are at operation here.  In

---

[3]In 2014, the legislature amended section 776.012 to conform with section 776.013 so as to require the person using force or threatening to use force not be engaged in unlawful activity.  See ch. 2014-195, § 3, Laws of Fla.; Andujar-Ruiz, 205 So. 3d at 806 n.3.  We note that our opinion is limited to application of those charged for conduct occurring prior to implementation of the 2014 amendments.

Andujar-Ruiz, the trial court used nearly identical language as the instruction at issue in the case at bar to instruct the jury that Andujar-Ruiz had a duty to retreat if he was engaged in unlawful activity. 205 So. 3d at 805. Our court held that an appellate public defender gave ineffective assistance to Andujar-Ruiz where he failed to argue on direct appeal that the trial court's instruction was fundamental error. Id. at 805-06. We reasoned that because Andujar-Ruiz wished to base his theory of self-defense solely on section 776.012(1), "[t]he trial court's instruction misled the jury by informing it that it was required to find that Andujar-Ruiz retreated before resorting to force, contrary to the plain language of section 776.012(1)." Id. at 807 (emphasis added). We held that this flawed jury instruction negated the defendant's only defense—self-defense. Id. (citing Williams v. State, 982 So. 2d 1190, 1194 (Fla. 4th DCA 2008)).

Our holdings in Little and Andujar-Ruiz dictate the outcome of this appeal. Eady's counsel made it clear that Eady wished for his theory of self-defense to be rooted in section 776.012(1) and objected to the inclusion of any language suggesting that Eady had a duty to retreat were the jury to determine he was engaged in unlawful activity. Although defense counsel alerted the trial court of our decision in Little, the trial court nevertheless instructed the jury that Eady had a duty to retreat if he was engaged in unlawful activity. The plain language of the applicable 2012 version of section 776.012(1) required no such thing. As in Andujar-Ruiz, the trial court here erroneously charged the jury that if it determined that Eady was engaged in unlawful activity, he had a duty to retreat. The only real point of contention at trial was the role Eady played in the fight. As the trial court itself mused, it was unclear "whether the jury would consider the fight [to be Eady's] fault or someone else's fault." Eady openly admitted that he took

- 7 -

part in the brawl outside the location of the second house party and that he swung his knife around in a manner that could have hurt others. The jury may have concluded that Eady's use of deadly force was inappropriate because he was engaged in unlawful activity of wielding his pocket knife and therefore had a duty to retreat. By charging the jury that Eady had a duty to retreat were it to determine Eady was engaged in unlawful activity, the trial court impermissibly negated Eady's sole defense at trial—self-defense. Although the trial court's jury instruction may have been proper had Eady's conduct occurred after the legislature's 2014 amendment of section 776.012, his conduct in fact occurred prior to that amendment. We therefore reverse Eady's conviction for attempted second-degree murder and remand for a new trial.

### III. CONCLUSION

The trial court erred by incorrectly charging the jury that Eady had a duty to retreat if he was engaged in unlawful activity while attempting to stand his ground. This negated Eady's sole defense at trial, which was self-defense. We therefore reverse Eady's conviction and remand for a new trial.

Reversed and remanded for a new trial.


CASANUEVA and KHOUZAM, JJ., Concur.